Oleg Elkhunovich (269238)
oelkhunovich@SusmanGodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
Shauli Bar-On (356650)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com
sbar-on@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERITY INVESTIGATIONS, LLC<br><br>    *Plaintiff Relator*,<br>vs.<br><br>E&B NATURAL RESOURCES MANAGEMENT CORPORATION<br><br>    *Defendant*. | Case No. 1:24-cv-00928-KES-CDB<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 et seq.**<br><br>**JURY TRIAL DEMANDED** |

*QUI TAM* COMPLAINT

I. **INTRODUCTION**

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $2 million (plus mandatory trebling) that Defendants wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it had fewer than 300 employees. That loan was later forgiven, and the federal government paid the bill.

2. The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves a false application for a Second Draw PPP loan.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

5. Defendant falsely certified to the SBA that it had 257 employees. As a direct result of that false statement, Defendant obtained a Second Draw PPP loan of $2,000,000.00, which was later forgiven.

6. Relator is an outside investigative company that detected Defendant's fraud by reviewing the Form 5500 that Defendant's employees' 401(k) plan filed with the Department of Labor. Those forms indicated that the 401(k) plan had more than 300 "active participants" in each

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.
[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

1
FIRST AMENDED COMPLAINT

of 2019, 2020, and 2021. Because an "active participant" is an employee, these forms' representations to the Department of Labor give the lie to Defendant's false statement to the SBA that it employed fewer than 300 persons.

## II. THE PARTIES

7. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

8. Defendant E&B Natural Resources Management Corporation ("E&B Natural Resources") is a California corporation with its principal place of business in Bakersfield, California.

## III. JURISDICTION AND VENUE

9. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

10. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

11. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV. THE FALSE CLAIMS ACT

12. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

13. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

14. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

15. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the

FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

16. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

17. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

18. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

19. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

20. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

21. The FCA imposes treble damages plus a civil penalty for each false claim. See 31 U.S.C. § 3729(a)(1).

22. The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). See 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

23. As of February 12, 2024, courts must assess a civil penalty of no less than $13,946 and no more than $27,894 per claim for FCA violations that occurred after November 2, 2015. See 28 C.F.R. § 85.5 Table 1.

24. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. See United States v. Van Oosterhout, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V. NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

25. On information and belief, no "public disclosure" has been made of Defendant's false statement and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

26. On information and belief, Defendant's fraudulent transactions have not been publicly disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

27. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

28. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendant's Form 5500 disclosures, other statements, and affiliate relationships, and (b) Defendant's false certification for the Second Draw PPP loan.

29. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI. THE SECOND DRAW PPP LOAN PROGRAM

30. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

4
FIRST AMENDED COMPLAINT

31. The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

32. The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

33. The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

34. The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[8]

35. That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[9]

36. That regulation defined "affiliate" broadly. The term includes "affiliation based on ownership": "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability,

---

[4] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).
[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).
[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

5
FIRST AMENDED COMPLAINT

under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." See 13 C.F.R. § 121.301(f)(1).[10]

37. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." See 13 C.F.R. § 121.301(f)(2).[11]

38. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." See 13 C.F.R. § 121.301(f)(3).[12]

39. Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." See 13 C.F.R. § 121.301(f)(4).[13]

40. Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." See 13 C.F.R. § 121.301(f)(5).[14]

---

[10] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[11] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[12] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[13] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[14] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

6
FIRST AMENDED COMPLAINT

41. The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

42. SBA rules made clear that "[i]t is the responsibility of the *borrower* to determine which entities (if any) are its affiliates," and "*[b]orrowers* must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation."[15]

43. The SBA Form 2483-SD required the applicant's authorized representative to certify that the applicant was "eligible to receive a loan under the rules in effect at the time this application is submitted."

44. The SBA Form 2483-SD required the applicant's authorized representative to certify that they "read" the Second Draw loan application instructions, "the Statements Required by Law and Executive Orders," and "the rules in effect at the time this application is submitted."

45. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

46. The SBA Form 2483-SD required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

47. The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

48. The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

**VII. DEFENDANT FALSELY CERTIFIED TO THE SBA ITS COMPLIANCE WITH**

---

[15] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://perma.cc/5Y8K-CR5Y (emphasis in original) (emphasis added).

7
FIRST AMENDED COMPLAINT

**THE SECOND DRAW PPP LOAN SIZE REQUIREMENTS**

A.     **BACKGROUND**

49.    Upon information and belief, Defendant E&B Natural Resources Management Corporation ("E&B Natural Resources") is a corporation registered in California[16] and headquartered at 1608 Norris Road, Bakersfield, CA 93308.[17]

50.    E&B Natural Resources can be validly served with process at 1608 Norris Road, Bakersfield, CA 93308.[18]

51.    E&B Natural Resources is a natural resources company that develops existing and acquired assets and implements thermal enhanced oil recovery and other technologies to expand existing oil production.[19] It was founded in 1971.[20]

52.    Since 2003, the Galesi Group owns E&B Natural Resources.[21]

53.    The Galesi Group owns and manages a diverse real estate portfolio in excess of over 11 million square feet. With a staff of 150 real estate and property management professionals, the Galesi Group provides a full array of property management services.[22]

54.    Under the Galesi Group's leadership, E&B Natural Resources has focused its business model to grow through value acquisitions in California, Louisiana, Kansas, and Wyoming.[23]

55.    The Galesi Group, through its CEO David M. Buicko and other executives, controlled numerous entities throughout the time period 2019-2021. Those entities include:

    a.   Galesi Management Corporation, managed by CEO David M. Buicko;[24]

---

[16] California, Secretary of State, E&B Natural Resources Management Corporation (for No. 666392).
[17] California, Secretary of State, E&B Natural Resources Management Corporation (for No. 666392).
[18] California, Secretary of State, E&B Natural Resources Management Corporation (for No. 666392).
[19] E&B Natural Resources, Home, https://www.ebresources.com/.
[20] E&B Natural Resources, About, https://www.ebresources.com/about.
[21] E&B Natural Resources, About, https://www.ebresources.com/about.
[22] The Galesi Group Website, History, https://www.galesi.com/history/.
[23] E&B Natural Resources, About, https://www.ebresources.com/about.
[24] BizProfile, Galesi Management Corporation, https://www.bizprofile.net/ny/schenectady/galesi-management-corporation.

b. Galesi Property Services, Inc., managed by CEO David M. Buicko;[25]

c. Harlem River Yard Ventures, Inc., managed by CEO David M. Buicko;[26]

d. Fg Ventures, Inc., managed by CEO David M. Buicko;[27]

e. Distribution Unlimited, Inc. f/k/a FG Ventures, Inc., managed by CEO David M. Buicko;[28]

f. Colonie Ventures, Inc., managed by CEO David M. Buicko;[29]

g. Albany Ventures, Inc., managed by CEO David M. Buicko;[30]

h. Argonox Realty Corporation, managed by CEO David M. Buicko;[31]

i. Northeastern IP Holdings, Inc., managed by CEO David M. Buicko;[32]

j. Northeastern Industrial Park, Inc., managed by CEO David M. Buicko;[33]

k. Scotia Holdings, Inc., managed by CEO David M. Buicko;[34]

l. Colonie Ventures, Inc., managed by CEO David M. Buicko;[35]

m. Equinox Equities, Inc., managed by CEO David M. Buicko;[36]

---

[25] BizProfile, Galesi Property Services, Inc., https://www.bizprofile.net/ny/schenectady/galesi-property-services-inc-2.
[26] BizProfile, Harlem River Yard Ventures, Inc., https://www.bizprofile.net/ny/schenectady/harlem-river-yard-ventures.
[27] BizProfile, Fg Ventures, Inc., https://www.bizprofile.net/ny/schenectady/fg-ventures-inc.
[28] BizProfile, Distribution Unlimited, Inc., https://www.bizprofile.net/ny/schenectady/distribution-unlimited-inc.
[29] BizProfile, Colonie Ventures, Inc., https://www.bizprofile.net/ny/schenectady/colonie-ventures-inc.
[30] BizProfile, Albany Ventures, Inc., https://www.bizprofile.net/ny/schenectady/albany-ventures-inc.
[31] BizProfile, Argonox Realty Corporation, https://www.bizprofile.net/ny/schenectady/argonox-realty-corporation.
[32] BizProfile, Northeastern Ip Holdings, Inc., https://www.bizprofile.net/ny/schenectady/northeastern-ip-holdings-inc.
[33] BizProfile, Northeastern Industrial Park, Inc., https://www.bizprofile.net/ny/schenectady/northeastern-industrial-park-inc-2.
[34] BizProfile, Scotia Holdings, Inc., https://www.bizprofile.net/ny/schenectady/scotia-holdings-inc.
[35] BizProfile, Colonie Ventures, Inc., https://www.bizprofile.net/ny/schenectady/colonie-ventures-inc.
[36] BizProfile, Equinox Equities, Inc., https://www.bizprofile.net/ny/schenectady/equinox-equities-inc.

  n. T & B Development, Inc., managed by CEO David M. Buicko;[37]

  o. Erly Realty Development, Inc., managed by CEO David M. Buicko;[38]

  p. Sg Properties Ventures, Inc., managed by CEO David M. Buicko;[39]

  q. Rcp17, Inc., managed by CEO David M. Buicko;[40]

  r. Rotterdam Ventures Inc. d/b/a Galesi Group, managed by CEO David M. Buicko;[41]

  s. E&B Sb Ventures II Corporation, directed by David M. Buicko;[42]

  t. E&B Sb Ventures I Corporation, directed by David M. Buicko;[43]

  u. Hexadyne Energy Corporation, directed by David M. Buicko;[44]

  v. Hillcrest Beverly Oil Corporation, directed by David M. Buicko;[45]

  w. Hboc Energy Marketing, Inc., directed by David M. Buicko;[46]

  x. Western Continental Operating Company, directed by David M. Buicko;[47] and

  y. Laymance Oil Company, directed by David M. Buicko.[48]

---

[37] BizProfile, T & B Development, Inc., https://www.bizprofile.net/ny/schenectady/t-b-development-inc.
[38] BizProfile, Erly Realty Development, Inc., https://www.bizprofile.net/ny/schenectady/erly-realty-development-inc.
[39] BizProfile, Sg Properties Ventures, Inc., https://www.bizprofile.net/ny/schenectady/sg-properties-ventures-inc.
[40] BizProfile, Rcp17, Inc., https://www.bizprofile.net/ny/schenectady/rcp17-inc.
[41] Rebh v. Rotterdam Ventures Inc (1998); Hunts Point Terminal Produce Cooperative Association Inc. v. Harlem River Yard Ventures, Inc., Harlem River Ventures II, Inc., and Francesco Galesi (Filed July 16, 2007); BizProfile, Rotterdam Ventures, Inc., https://www.bizprofile.net/ny/schenectady/rotterdam-ventures-inc-2.
[42] BizProfile, E&B Sb Ventures II Corporation, https://www.bizprofile.net/ca/bakersfield/e-b-sb-ventures-2.
[43] BizProfile, E&B Sb Ventures I Corporation, https://www.bizprofile.net/ca/bakersfield/e-b-sb-ventures.
[44] BizProfile, Hexadyne Energy Corporation, https://www.bizprofile.net/ca/bakersfield/hexadyne-energy-corporation.
[45] BizProfile, Hillcrest Beverly Oil Corporation, https://www.bizprofile.net/ca/bakersfield/hillcrest-beverly-oil-corporation.
[46] BizProfile, Hboc Energy Marketing, Inc., https://www.bizprofile.net/ca/bakersfield/hboc-energy-marketing-inc.
[47] BizProfile, Western Continental Operating Company, https://www.bizprofile.net/ca/bakersfield/western-continental-operating-company.
[48] BizProfile, Laymance Oil Company, https://www.bizprofile.net/ca/bakersfield/laymance-oil-company.

56. On information and belief, E&B Natural Resources, the Galesi Group, and the entities listed in ¶ 55, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

**B.    FALSE STATEMENT TO OBTAIN SECOND DRAW PPP LOAN**

57. In 2020, E&B Natural Resources submitted its Borrower Application form to apply for a First Draw PPP loan in the amount of $5,527,940.00.

58. On or about June 11, 2021, the U.S. government forgave 100% of E&B Natural Resources' First Draw PPP loan, including interest, in the amount of $5,591,511.31.

59. In 2021, E&B Natural Resources applied for a Second Draw PPP loan.

60. E&B Natural Resources submitted its Borrower Application form, SBA Form 2483-SD, to PNC Bank, National Association, in Wilmington, Delaware.

61. On its Form 2483-SD, E&B Natural Resources listed its address as 1608 Norris Rd, Bakersfield, CA 93308-2234.

62. On its SBA Form 2483-SD, E&B Natural Resources represented that it and its affiliates had 257 employees—under the 300-employee limit needed to be eligible to apply.

63. E&B Natural Resources' SBA Form 2483-SD's representation regarding the total number of its and its affiliates' employees was false. E&B Natural Resources and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

64. E&B Natural Resources deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. E&B Natural Resources signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

65. On or about February 18, 2021, E&B Natural Resources was approved for a Second Draw PPP loan in the amount of $2,000,000.00 by lender PNC Bank.

66. The U.S. government paid lender PNC Bank a lender's processing fee of 1% of the $2,000,000.00 loan, in the amount of $20,000.00.[49]

---

[49] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

11
FIRST AMENDED COMPLAINT

67. On or about March 4, 2022, the U.S. government forgave 100% of E&B Natural Resources' Second Draw PPP loan, including interest, in the amount of $2,020,777.78.

**C.   EVIDENCE OF MORE THAN 300 EMPLOYEES**

68. E&B Natural Resources maintained a 401(k) retirement plan for its employees (the "E&B Natural Resources Employee Benefits Plan").

69. The E&B Natural Resources Employee Benefits Plan was a "single employer" plan, meaning that it provided pension benefits solely to the employees of one employer.[50] That employer was E&B Natural Resources.[51]

70. In 2019, 2020, and 2021, the E&B Natural Resources Employee Benefits Plan had the following legal name: E&B Natural Resources Management Corp. 401(k) Plan.

71. Each year, the E&B Natural Resources Employee Benefits Plan was required to file a Form 5500 with the U.S. Department of Labor. That form required the E&B Natural Resources Employee Benefits Plan to state the "number of active participants" at the beginning and end of the plan year. Form 5500 instructed E&B Natural Resources that "active participants" are "individuals who are currently in employment covered by the plan and who are earning or retaining credited service under the plan."[52]

72. In 2019, the E&B Natural Resources Employee Benefits Plan reported 407 active participants at the start and 427 active participants at the end of the year.[53]

73. In 2020, the E&B Natural Resources Employee Benefits Plan reported 435 active participants at the start and 356 active participants at the end of the year.[54]

74. In 2021, the E&B Natural Resources Employee Benefits Plan reported 356 active participants at the start and 336 active participants at the end of the year.[55]

---

[50] The plan's Forms 5500 for 2019, 2020, and 2021 check the box in section A attesting that it was "a single-employer plan."
[51] The plan's Forms 5500 for 2019, 2020, and 2021 list the "employer" as "E&B Natural Resources Management Corp." The Forms 5500 also give the same Employer Identification Number. The address is listed as 1608 Norris Road, Bakersfield, CA 93308-2234 in 2020 and 2021, and 1600 Norris Road, Bakersfield, CA 93308-2234 in 2019.
[52] Instructions for Form 5500.
[53] Form 5500 (2019).
[54] Form 5500 (2020).
[55] Form 5500 (2021).

75. Upon information and belief, the "active participants" listed in E E&B Natural Resources Employee Benefits Plan's Forms 5500 was significantly less than E&B Natural Resources' true numbers of domestic employees.

76. The number of "active participants" reported in the E&B Natural Resources Employee Benefits Plan excluded multiple categories of employees, including those who had not "attained age 18 and completed the lesser of 1,000 hours of service within 12 consecutive months, or three consecutive months of employment" and "those employees covered by a collective bargaining agreement, leased employees, and non-resident aliens."[56]

77. Upon information and belief, the number of "active participants" reported in the E&B Natural Resources Employee Benefits Plan excluded the total number of employees of E&B Natural Resources' affiliates.

78. In its SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. See 13 C.F.R. § 121.106(b)(1).

79. If E&B Natural Resources had counted its affiliate the Galesi Group's 150 employees, *see* supra ¶ 53, E&B Natural Resources would have listed 407 employees in its SBA Form 2483-SD. In fact, the total number of employees for both Defendant E&B Natural Resources, the Galesi Group, and other affiliates was higher than 407 employees.

80. On or about April 13, 2020, certain affiliates of E&B Natural Resources applied for First Draw PPP loans and reported the following number of employees:

    a. Distribution Unlimited, Inc. reported 69 employees;

    b. Rotterdam Ventures, Inc. reported 58 employees; and

    c. Northeastern Industrial Park, Inc. reported 20 employees.

81. E&B Natural Resources reported 257 employees in its SBA Form 2483-SD. If E&B Natural Resources had counted the employees of just three affiliates—Distribution Unlimited, Inc., Rotterdam Ventures, Inc., and Northeastern Industrial Park, Inc.—it would have reported well over 300 employees.

---

[56] Form 5500, Notes to Financial Statements at 5 (2021).

82. Other databases also contradict the representation that E&B Natural Resources made in its SBA Form 2483-SD that it and its affiliates only had 257 employees. For instance, ZoomInfo reports that E&B Natural Resources has 351 employees across its company and its affiliates.[57]

83. On information and belief, E&B Natural Resources' payroll records from 2019, 2020, and 2021 will confirm what E&B Natural Resources always knew—that it and its affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment

### 31 U.S.C. § 3729(a)(1)(A)

84. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

85. Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender a claim for approval of a Second Draw PPP loan.

86. Defendant's knowingly false claim on its SBA Form 2483-SD was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

87. But for Defendant's knowingly false claim, the lender would not have issued the loan and the SBA would not have forgiven it.

88. The Second Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

89. The Second Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

---

[57] ZoomInfo, E&B Natural Resources, https://www.zoominfo.com/c/eb-natural-resources/344471393 (last visited July 25, 2024).

90. The Government later reimbursed the lender 100% of the amount of Defendant's Second Draw PPP loan, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim

### 31 U.S.C. § 3729(a)(1)(B)

91. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

92. Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made a false record and statement—namely, its SBA Form 2483-SD and its included certifications—to support a false claim submitted to the lender for approval of Second Draw PPP loan.

93. Defendant's knowingly false record and statement was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

94. But for Defendant's knowingly false record and statement, the lender would not have issued the loan and the SBA would not have forgiven it.

## THIRD CAUSE OF ACTION

### Improperly Avoiding an Obligation to Pay or Transmit Money

### 31 U.S.C. § 3729(a)(1)(G)

95. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

96. Defendant violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding Defendant's obligation to pay or transmit money to the SBA—namely, the money Defendant received from the SBA in forgiveness for Defendant's Second Draw PPP loan.

97. Defendant knew it improperly received money from the SBA when the SBA forgave Defendant's Second Draw PPP loan.

98. Defendant had an obligation to pay back the SBA the full amount Defendant received in forgiveness of the Second Draw PPP loan.

99. Defendant knew of its obligation to pay back the SBA.

100. Defendant improperly avoided its obligation to pay back the SBA.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: February 3, 2026

**SUSMAN GODFREY L.L.P.**

By: /s/ Oleg Elkhunovich

Oleg Elkhunovich (269238)
oelkhunovich@SusmanGodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
Shauli Bar-On (356650)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com
sbar-on@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*