MATTHEW D. SEGAL, Bar No. 190938
matthew.segal@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone:  916.447.0700
Facsimile:  916.447.4781

JACOB C. GOLDBERG, Bar No. 310862
jacob.goldberg@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. VERITY INVESTIGATIONS, LLC, <br><br> Plaintiff Relator, <br><br> v. <br><br> E&B NATURAL RESOURCES MANAGEMENT CORPORATION, <br><br> Defendant. | Case No. 1:24-cv-00928-KES-CDB <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM IN SUPPORT** <br><br> Date:  July 6, 2026 <br> Time:  1:30 p.m. <br> Location:  Courtroom 6, 7th Floor <br> Judge:  Hon. Kirk E. Sherriff |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on July 6, 2026, or as soon thereafter as this motion may be heard, before Judge Kirk E. Sherriff in Courtroom 6, 7th Floor, of the United States District Court, for the Eastern District of California, located at 2500 Tulare St., Fresno, CA 93721, Defendant E&B Natural Resources Management Corporation ("E&B") will, and hereby does, move this Court for an order dismissing the above-titled action pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b).  First, this suit is subject to the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT

152998753.1 0056939-00031

1:24-CV-00928-KES-CDB

public disclosure bar of the False Claims Act ("FCA").  Second, Relator Verity Investigations, LLC ("Relator") has not pleaded its FCA claims with the requisite particularity and plausibility. In addition, Relator's Third Cause of Action is a redundant "reverse" FCA claim that must be dismissed as a matter of law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum in Support, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

On May 7, 2026, counsel for both parties conferred via videoconference regarding the substance of this motion and other procedural matters related to this case. Counsel were unable to resolve this motion.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT
152998753.1 0056939-00031

-ii-

1:24-CV-00928-KES-CDB

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTUAL ALLEGATIONS ......................................................... 3

    A.  Overview of the Paycheck Protection Program ....................................... 3

    B.  Relator's Allegations Against E&B ........................................................ 3

    C.  Relator's Claims Against E&B ............................................................... 4

III. LEGAL STANDARD ......................................................................................... 5

IV. ARGUMENTS AND AUTHORITIES ............................................................... 6

    A.  The Public Disclosure Bar Requires Dismissal of the Complaint ................ 6

        1.   There Has Been Prior Public Disclosure of the Allegations in this Case .......... 7

        2.   Relator Is Not an Original Source .................................................. 9

        3.   The Court Should Dismiss the Complaint with Prejudice ................ 10

    B.  The Complaint Should Be Dismissed for Failure to Allege A False Statement Made with Scienter. ................................................... 11

        1.   Relator Fails to Allege a False Statement with Particularity. ........... 12

        2.   Relator Fails to Allege Sufficient Plausible Facts to Show Scienter ... 16

    C.  Relator's "Reverse False" Claim Should Be Dismissed ........................... 18

        1.   Relator's Third Cause of Action Is Redundant of Its First and Second Causes of Action. ......................................... 19

        2.   Relator Fails to Plausibly Allege that E&B Made Any False Statement or Concealed or Knowingly and Improperly Avoided or Decreased an Obligation to Pay Money or Property to the Government ............................ 19

V. CONCLUSION ................................................................................................... 20

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT
152998753.1 0056939-00031

-iii-

1:24-CV-00928-KES-CDB

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018).................................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................... 5, 16

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)................................................................................ 5

*United States ex rel. Beck v. St. Joseph Health Sys.*,
No. 5:17-CV-052-C, 2021 WL 7084164 (N.D. Tex. Nov. 30, 2021)...................................... 7

*Bly–Magee v. California*,
236 F.3d 1014 (9th Cir. 2001)................................................................................ 6

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047, 1055 (9th Cir. 2011)........................................................ 5, 6, 12, 18

*United States ex rel. Calva v. Impac Secured Assets Corp.*,
No. SACV 16-1983  JVS (JCGx), 2018 WL 6016152, at *3 (C.D. Cal. June
12, 2018) ...................................................................................................... 7

*Cause of Action v. Chicago Transit Auth.*,
815 F.3d 267 (7th Cir. 2016)................................................................................ 9

*United States ex rel. Durkin v. Cnty. of San Diego*,
No. 15CV2674-MMA (WVG), 2018 WL 3361148 (S.D. Cal. July 10, 2018)...................... 17

*United States ex rel. Hong v. Newport Sensors, Inc.*,
No. SACV 13-1164-JLS, 2016 WL 8929246 (C.D. Cal. May 19, 2016), *aff'd
sub nom. United States ex rel. Juan Hong v. Newport Sensors, Inc*, 713 F.
App'x 724 (9th Cir. 2018)................................................................................ 7

*United States ex rel. Hopper v. Anton*,
91 F.3d 1261 (9th Cir. 1996)................................................................................ 17

*United States ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016)............................................................................ 8, 9

*United States ex rel. Modglin v. DJO Glob. Inc.*,
114 F. Supp. 3d 993 (C.D. Cal. 2015),  ................................................................ 12

*United States v. DJO Glob., Inc.*,
678 F. App'x 594 (9th Cir. 2017) ........................................................................ 12

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                    -iv-                    1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989)..................................................................................... 12

*United States ex rel. MSP WB, LLC v. State Farm Mut. Auto. Ins. Co.*,
  No. 19-12165, 2024 WL 1316223 (E.D. Mich. Mar. 26, 2024).  .......................... 11

*United States ex rel. Michigan v. State Farm Mut. Auto. Ins. Co.*, No. 24-1379,
  2025 WL 101639 (6th Cir. Jan. 15, 2025) .............................................................. 11

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)...................................................................................... 5

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999)..................................................................................... 16

*Prather v. AT&T, Inc.*,
  847 F.3d 1097 (9th Cir. 2017)................................................................................... 10

*United States ex rel. Relator LLC v. Erskine*,
  No. 22CV1158-LL-AHG, 2025 WL 796621 (S.D. Cal. Feb. 25, 2025) ................. 11

*United States ex rel. Relator LLC v. Kellog*,
  No. 23-CV-118-CAB-BLM, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025).............. 7

*United States ex rel. Relator, LLC v. Kootstra*,
  No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) .................. 7, 8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006)....................................................................................... 1

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013).................................................................................... 12

*United States ex rel. Sam Jones Co., LLC v. Biotronik, Inc.*,
  152 F.4th 946 (9th Cir. 2025) ..................................................................................... 6

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
  563 U.S. 401 (2011)..................................................................................................... 7

*United States ex rel. Smith v. Odom*,
  148 F.4th 1322 (11th Cir. 2025) ................................................................................ 11

*Smith v. Odom*,
No. 25-893, 2026 WL 922555 (U.S. Apr. 6, 2026) ...................................................... 11

*United States ex rel. Sorgi v. Jazz Pharms. PLC*,
  802 F. Supp. 3d 49 (D. Mass. 2025) .......................................................................... 10

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)....................................................................................... 5

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                 -v-                    1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

*U.S. ex rel. Thomas v. Siemens AG*,
      708 F. Supp. 2d 505 (E.D. Pa. 2010) ................................................................... 18

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*,
      512 F. Supp. 3d 1096 (D. Haw. 2021) ................................................................. 19

*United States Hastings v. Wells Fargo Bank, NA, Inc.*,
      656 F. App'x 328 (9th Cir. 2016) ........................................................................... 9

*United States v. Allergan, Inc.*,
      46 F.4th 991 (9th Cir. 2022) ............................................................................ 6, 7

*United States v. Associated Foreign Exch. Inc.*,
      No. 2:24-CV-10086-SB-BFM, 2026 WL 790778 (C.D. Cal. Mar. 13, 2026) ................. 14, 15

*United States v. Baxter*,
      No. 23-CV-00336-WHO, 2025 WL 1343076 (N.D. Cal. May 8, 2025) ............................. 16

*United States v. Bourseau*,
      531 F.3d 1159 (9th Cir. 2008) ............................................................................. 14

*United States v. Corinthian Colleges*,
      655 F.3d 984 (9th Cir. 2011) .......................................................................... 16, 17

*United States v. Kinetic Concepts, Inc.*,
      No. CV0801885BROAGRX, 2017 WL 2713730 (C.D. Cal. Mar. 6, 2017) ........................ 18

*Ebeid ex rel. United States v. Lungwitz*,
      616 F.3d 993 (9th Cir. 2010) ............................................................................... 12

*United States v. Mariner Health Care, Inc.*,
      552 F. Supp. 3d 938 (N.D. Cal. 2021) ................................................................... 18

*Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*,
      816 F. App'x 64 (9th Cir. 2020) ........................................................................... 17

*United States v. Sci. Applications Int'l Corp.*,
      626 F.3d 1257 (D.C. Cir. 2010) ........................................................................... 17

*United States v. United Healthcare Ins. Co.*,
      848 F.3d 1161 (9th Cir. 2016) ............................................................................. 12

*Wagh v. Metris Direct, Inc.*,
      363 F.3d 821 (9th Cir. 2003), ............................................................................... 5

**Statutes**

29 U.S.C. § 1026 ....................................................................................................... 8

31 U.S.C. § 3729(a)(1) ............................................................................................ 18

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT        -vi-        1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

31 U.S.C. § 3729(a)(1)(A) ................................................................................................ 4

31 U.S.C. §§ 3729(a)(1)(A) and (B) .............................................................................. 19

31 U.S.C. § 3729(a)(1)(B) ................................................................................................ 4

31 U.S.C. § 3729(a)(1)(G) .....................................................................................*passim*

31 U.S.C. § 3729(b)(1)(A) .............................................................................................. 16

31 U.S.C. § 3730 .............................................................................................................. 9

31 U.S.C. § 3730(b)(2) ..................................................................................................... 5

31 U.S.C. § 3730(d)(2) ..................................................................................................... 5

31 U.S.C. § 3730(e)(4)(A) ............................................................................................... 6

2020. The CARES Act ...................................................................................................... 3

Coronavirus Aid, Relief, and Economic Security Act ..................................................... 3

False Claim Act ................................................................................................................ 1

**Other Authorities**

13 C.F.R. § 121.103 ................................................................................................... 14, 15

13 C.F.R. § 121.106 ........................................................................................................ 13

13 C.F.R. § 121.301 ........................................................................................................ 14

*Federal Loans*, ProPublica (Oct. 27, 2024),
    https://projects.propublica.org/coronavirus/bailouts/................................................. 4

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 5, 20

Federal Rule of Civil Procedure Rule 8 .......................................................................... 16

Federal Rule of Civil Procedure Rule 8(a).........................................................................6

Federal Rule of Civil Procedure Rule 9(b) ...........................................................*passim*

*Moiz Syed and Derek Willis, Tracking PPP: Search Every Company Approved for
    Federal Loans*, ProPublica (Oct. 27, 2024),
    https://projects.propublica.org/coronavirus/bailouts/ .............................................. 4

*U.S. Department of Labor, Form 5500 Search, Search*, EFAST,
    https://www.efast.dol.gov/5500Search/ (last visited May 14, 2026) ...................... 4

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                    -vii-                    1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

## MEMORANDUM IN SUPPORT

## I.  INTRODUCTION

This *qui tam* action is one of 60 cases filed by the same Relator in the past two years.[1] Relator is not an authentic *qui tam* insider, but, rather, a two-person enterprise engaged in the business of "connecting dots" available online and filing cases that try to turn that public information to its private benefit. In each of its cookie-cutter suits, Relator alleges that a defendant applied for a Paycheck Protection Program ("PPP") loan from the United States Small Business Administration ("SBA") and falsely certified in its application that it had less than the maximum number of employees a borrower-applicant could have to be eligible for such a loan. Relator then alleges that SBA's funding of the PPP loan gives rise to claims under the FCA for submitting false claims for payment, creating a false record or statement material to a false claim, and improperly avoiding an obligation to pay or transmit money.

This case names E&B Natural Resources Management Corporation ("E&B") as a defendant. Relator alleges no apparent connection to E&B or any insider involvement or knowledge of E&B's affairs. Rather, the First Amended Complaint ("Complaint") alleges nothing more than what any web surfer could say. It alleges the conclusion that E&B falsely certified that it had less than 300 employees and obtained a loan of $2,000,000. But these allegations—which primarily recite legal elements or parrot statutory language and include no nonpublic information—are not sufficient for the Relator to be a relator at all, or to state any claim under the FCA.

First, and most fundamentally, all of the allegations in this case come from public sources. The FCA was intended to induce fraud reporting by insiders, whom it rewards with a bounty. So-called "parasitic" relators who know no more than the public are not the intended beneficiaries. Thus, the FCA precludes a relator from pursuing a claim based on information that is publicly

---

[1] The Court can take judicial notice of other court filings made by the same party. *See*, *e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that courts "may take judicial notice of court filings and other matters of public record"). In the past two years, Relator has filed 65 other False Claim Act suits against other small businesses alleging a false claims related to the PPP program—most of which have been dismissed. *See* Request for Judicial Notice and Notice of Incorporation ("RJN") ¶ 1, Ex. 1.)

available, unless the relator was the original source. This "public disclosure bar" applies to this case. Here, Relator relies entirely on public sources—federal government reports, public databases, and public websites. The Complaint includes no allegations that the Relator disclosed this information to the Government or that the Relator has added any new material information. For this straightforward reason, the Complaint represents a paradigmatic parasitic FCA suit, that is, an attempt to use public information for the Relator's private gain. And, for this reason, unless the Government opposes dismissal, the statutory public disclosure bar requires that the Court dismiss this Complaint.

Second, even if the public disclosure bar did not apply, Relator's general allegations do not adequately allege that E&B made any false statement under SBA regulations. There are no particularized factual allegations that E&B had more than 300 employees in any *specific pay period*, much less in each of the pay periods for the prior two years, which is how the SBA regulations count size. Moreover, the Complaint lacks particularized allegations setting forth how any other entity was an "affiliate" of E&B within the meaning of the relevant SBA regulations. Even if the Complaint did make a particularized allegation of a material false statement, the Complaint fails to allege plausibly that E&B acted with the requisite scienter. The FCA does not impose treble damages for a failed good faith attempt at compliance with complex regulations. Instead, to state a claim under the FCA, a relator must allege a false statement made with actual knowledge, deliberate indifference, or reckless disregard for the truth or falsity of relevant information. But, here, the Complaint includes no factual allegations of circumstances to suggest that any agent of E&B acted with any kind of state of mind, much less with knowledge, deliberate ignorance, or reckless disregard. Indeed, it includes no allegations regarding the state of mind of *any* agent or representative of E&B, at all. That is no surprise, because Relator knows nothing more about E&B than the rest of the public does. The Court should dismiss this generic suit against E&B.

Finally, regardless of whether the public disclosure bar precludes this suit or Relator has properly alleged falsity or scienter, Relator's Third Cause of Action for violation of 31 U.S.C. § 3729(a)(1)(G)—otherwise known as a "reverse" FCA claim—fails because it is an improper

duplication of Relator's other FCA claims. Indeed, Relator alleges no facts showing that E&B did anything to avoid obligation to repay, as is required to state a claim under 31 U.S.C. § 3729(a)(1)(G). Accordingly, leaving aside pleading deficiencies common to all claims, Relator's cause of action for violation of 31 U.S.C. § 3729(a)(1)(G) must be dismissed.

## II.  RELEVANT FACTUAL ALLEGATIONS

### A.    Overview of the Paycheck Protection Program

This action arises from and involves the PPP, a small business relief program created by the United States Congress at the onset of the COVID-19 pandemic through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") of 2020. The CARES Act created the PPP, under which certain eligible small and nonprofit businesses could receive forgivable loans to help them cover certain business expenses, including payroll and rent costs. (ECF No. 30 ("FAC" or "Complaint") ¶ 2.)

The PPP offered two types of loans: First Draw loans and Second Draw loans. First Draw loans, which were capped at $10,000,000, were generally available for qualifying businesses with 500 or fewer employees. Second Draw loans, which were capped at $2,000,000, were available for businesses that had received a First Draw loan and met other eligibility criteria. Relator alleges that Second Draw loans were limited to businesses with no more than 300 employees, without exception, and further alleges this limit was communicated to borrower applicants through a "Frequently Asked Questions" web page on the SBA's website, as well as through regulations set forth in the Code of Federal Regulations. (FAC ¶¶ 30-36.) Only the Second Draw loan criteria are relevant to this dispute. (FAC ¶ 3.) To apply for a Second Draw PPP loan, businesses were required to fill out a specific application form, the SBA Form 2483-SD, and submit the form to a private lender. (FAC ¶ 41.)

### B.    Relator's Allegations Against E&B

The allegations regarding E&B are limited, and the Relator's role in these allegations could be played by anyone with a web browser and an internet connection. The Relator describes itself as an "investigative firm formed by two professionals with widespread experience," which is likely a reference to the 60-odd cases that it has recently filed, "in detecting and reporting fraud

Stoel Rives LLP
Attorneys at Law
Portland

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                    -3-                    1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

on the U.S. public fisc." (FAC ¶ 7.) The Relator alleges that it "detected Defendant's fraud by reviewing the Form 5500—a report available to the public on the Department of Labor's website[2]—that Defendant's employees' 401(k) plan filed with the Department of Labor." (FAC ¶ 6.) The Complaint does not allege that Relator has any specific, nonpublic information about E&B, at all. (FAC, *passim*.)

Instead, the Complaint generally alleges that E&B is a natural resources company, incorporated in California and headquartered in Bakersfield. (FAC ¶¶ 49-50.) It alleges that "the Galesi Group owns" E&B, without including any allegations that the "Galesi Group" is a legal entity, at all. (FAC ¶ 52.) It alleges that an individual associated with the "Galesi Group" manages other entities or "directs" other entities. (FAC ¶ 55.) Relator alleges that in 2021, E&B applied for a Second Draw PPP loan for $2,000,000 and represented on the SBA Form 2483-SD that it had 257 employees. (FAC ¶¶ 57-62.) Relator also alleges that on or about March 4, 2022, the United State forgave this loan. (FAC ¶ 67.) Of course, information about every PPP loan application and forgiveness is available online, to everyone.[3]

Relator alleges that E&B sponsors an employee benefit plan and that, in its publicly filed Form 5500 report available from the Department of Labor, this plan reports more than 300 active participants at the start or end date of several years. (FAC ¶¶ 72-74.) Relator also alleges that a website called "ZoomInfo" included a "report" that E&B 351 employees in July 2024—three years after E&B's allegedly false certification. (FAC ¶ 82.)

**C.    Relator's Claims Against E&B**

Relator asserts three causes of action against E&B: (1) submitting false claims for payment under 31 U.S.C. § 3729(a)(1)(A); (2) creating a false record or statement material to a false claim under 31 U.S.C. § 3729(a)(1)(B); and (3) improperly avoiding an obligation to pay or transmit money under 31 U.S.C. § 3729(a)(1)(G). (FAC ¶¶ 84-100.) Relator seeks damages equal

---

[2] U.S. Department of Labor, *Form 5500 Search*, EFAST, https://www.efast.dol.gov/5500Search/ (last visited May 14, 2026).
[3] Moiz Syed and Derek Willis, *Tracking PPP: Search Every Company Approved for Federal Loans*, ProPublica (Oct. 27, 2024), https://projects.propublica.org/coronavirus/bailouts/.

to three times the amount of damages that the United States has sustained, maximum civil penalties, attorneys fees, and additional interest. (FAC at 16.)

After Relator served a copy of the initial complaint in this case on the Government, as it was required to do by statute, the Government elected not to intervene. (ECF No. 26; *see also* 31 U.S.C. § 3730(b)(2).) Relator has elected to continue this case, notwithstanding the Government's decision. In this circumstance, Relator could be entitled to 25% to 30% of the proceeds of the action or settlement. 31 U.S.C. § 3730(d)(2). Relator seeks the maximum allowed amount. (FAC at 16.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) directs dismissal of any complaint that fails to "state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Bald assertions and legal conclusions are "not entitled to the assumption of truth." *Id*. at 679. Indeed, the Court "need not . . . accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory or [an] absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 9(b) imposes a heightened pleading standard on fraud claims, including claims under the FCA, and requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s "particularity" requirement, a complaint must set forth, at a minimum, the "who, what, when, where, and how" of the alleged fraud "as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation modified).

"[C]omplaints alleging fraud must comply with both [Federal Rules of Civil Procedure] 8(a) and 9(b)." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003), *overruled on other*

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT
152998753.1 0056939-00031

-5-

1:24-CV-00928-KES-CDB

*grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc). "Because Rule 8(a) requires the pleading of a plausible claim . . . claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso*, 637 F.3d at 1055. "That is, the pleading must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

## IV.  ARGUMENTS AND AUTHORITIES

### A.    The Public Disclosure Bar Requires Dismissal of the Complaint

The FCA includes "limits on who can bring a *qui tam* action and the sources of information upon which they can base their suit." *United States v. Allergan, Inc.*, 46 F.4th 991, 994 (9th Cir. 2022). Among other things, by statute, the "public disclosure" bar requires the court to "dismiss an action or claim" brought by a relator "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A). Put differently, "the public disclosure bar prevents a relator from merely repackaging information enumerated in the public disclosure bar for personal profit by asserting an FCA claim." *Allergan*, 46 F.4th at 994; *see also*, *United States ex rel. Sam Jones Co., LLC v. Biotronik, Inc.*, 152 F.4th 946, 954 (9th Cir. 2025), *as corrected* (Sept. 15, 2025) (describing history of public disclosure bar to limit "parasitic" FCA claims where "the government already had reason to know about the fraud, or in some cases, because the relators' claims were copied directly from government documents").

/ / /

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND MEMORANDUM IN IN SUPPORT

152998753.1 0056939-00031

-6-

1:24-CV-00928-KES-CDB

An analysis of the "public disclosure bar" involves two steps. First, courts must consider whether there was a "public disclosure" of the allegations underlying the claims, and second, if there is a public disclosure, courts analyze whether the relator is an "original source" who made that disclosure to the Government. *United States ex rel. Calva v. Impac Secured Assets Corp.*, No. SACV 16-1983 JVS (JCGx), 2018 WL 6016152, at *3 (C.D. Cal. June 12, 2018). Here, both of these elements plainly apply: There has been a public disclosure, and the Relator is not an original source.

**1.        There Has Been Prior Public Disclosure of the Allegations in this Case**

A "public disclosure" exists when "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was 'public'; and (3) the relator's action is 'based upon' the allegations or transactions publicly disclosed." *Allergan*, 46 F.4th at 994 (citation omitted).  The Complaint alleges these facts in this case.

Public databases, publicly available federal forms, and public internet postings—all of the sources of information in this case—constitute "channels" specified in the public disclosure bar. Specifically, publicly available government documents or forms request constitute a "report" pursuant to the statute. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 410 (2011). Likewise, a database available on a government website, and more specifically, the database disclosing PPP loan data, qualifies as a "report" for purposes of the public disclosure bar.  *United States ex rel. Relator LLC v. Kellog*, No. 23-CV-118-CAB-BLM, 2025 WL 897439, at *3 (S.D. Cal. Mar. 24, 2025); *see also*, *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470, at *4 (E.D. Cal. Aug. 6, 2024) (applying "broad definition" of "report" to hold that PPP data on public website constitutes a "report" for purposes of public disclosure bar). And "[i]nformation publicly available on the Internet generally qualifies as 'news media'" for purposes of the public disclosure bar. *United States ex rel. Hong v. Newport Sensors, Inc.*, No. SACV 13-1164-JLS (JPRX), 2016 WL 8929246, at *5 (C.D. Cal. May 19, 2016), *aff'd sub nom. United States ex rel. Juan Hong v. Newport Sensors, Inc*, 713 F. App'x 724 (9th Cir. 2018); *see also*, *United States ex rel. Beck v. St. Joseph Health Sys.*, No. 5:17-CV-052-C, 2021 WL 7084164, at *3 (N.D. Tex. Nov. 30, 2021) (holding that public

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                -7-                1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

websites "fit within the broadly construed 'news media' channel of public disclosures because they are on publicly available websites").

Here, the Complaint expressly draws from these channels. It includes facts from public PPP data that, multiple courts have held, falls within the ambit of a "report" for purposes of the public disclosure bar. (FAC ¶¶ 57-67, 80-81.) It relies on the publicly available Form 5500 that can be accessed from a federal government website. (FAC ¶ 71 (alleging that "[e]ach year, the E&B Natural Resources Employee Benefits Plan was required to file a Form 5500"); FAC ¶¶ 72-79.) It then, in passing, references a report from a public website, ZoomInfo. (FAC ¶ 82.) Each of these sources constitutes a "Federal report" or the "news media" for purposes of the public disclosure bar.

All of this information is public. As a court of this District has already noted, "information about PPP borrowers such as the borrower's name, location, business type, industry, business age, lender, date the PPP loan was approved, loan amount, spending category, amount forgiven, number of loans, and jobs reported" all constitute public information. *Kootstra*, 2024 WL 3666470, at *4. Form 5500 reports, by statute, constitutes "public information" available for public inspection. *See* 29 U.S.C. § 1026 (providing that "the contents of the annual reports, statements, and other documents filed with the Secretary pursuant to this part shall be public information and the Secretary shall make any such information and data available for inspection in the public document room of the Department of Labor"). And ZoomInfo is a public website, that can be accessed at a link identified in the Complaint itself. (FAC ¶ 82 n. 57.)

Third, the Relator's action here is entirely based on these public sources. For purposes of the public disclosure bar, "[t]he substance of the disclosure . . . need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016) (citation omitted). Put more clearly,

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND MEMORANDUM IN IN SUPPORT
152998753.1 0056939-00031

-8-

1:24-CV-00928-KES-CDB

*Id.* at 571 (citation omitted).

In this case, this analysis is straightforward. According to the Complaint, the allegation of "fraud" is that E&B represented that "it and its affiliates had 257 employees." (FAC ¶ 62.) This allegation—the "X" in the formula articulated in *Mateski*—is plainly available from public sources. The alleged proof that E&B's statement was false is that E&B's Form 5500, other public PPP applications submitted by alleged affiliates of E&B, and a public website suggest that E&B had more than 300 employees. (FAC ¶¶ 72-74, 80, 82.) This allegation—the "Y" in the *Mateski* formula—is also expressly available, and alleged to be available, from public sources. Any person with a connected web browser could claim that E&B did not have 257 employees if, as Relator now alleges, the Form 5500, PPP application from other entities, or a public website show that E&B had more than 300 employees. Under the Ninth Circuit's straightforward standard, the allegations in the Complaint are from public sources.

**2.      Relator Is Not an Original Source**

Relator's allegations also show, clearly, that Relator is not an "original source." The statute defines an "original source" for purposes of the public disclosure bar as "an individual who either (i) *prior to a public disclosure* under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is *independent of and materially adds* to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730 (emphasis added). For purposes of this standard, "[a]llegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud—they must add value to what the government already knew." *United States Hastings v. Wells Fargo Bank, NA, Inc.*, 656 F. App'x 328, 331–32 (9th Cir. 2016). In other words, "in order to avoid the public-disclosure bar, it is essential that a relator present 'genuinely new and material information' beyond what has been publicly disclosed." *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 281 (7th Cir. 2016) (citation omitted).

/ / /

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT
152998753.1 0056939-00031

-9-

1:24-CV-00928-KES-CDB

Here, Relator makes the conclusory allegation that it has met this standard because "Relator has 'connected the dots' between" E&B's Form 5500 disclosures and E&B's false certification. (FAC ¶ 28.) But it alleges no actual material information relating to the alleged fraud. And there are no allegations—nor could there be—that Relator made any disclosure to the Government *before* the plainly public disclosures in this case.

Under Ninth Circuit law, "connecting the dots" in the public domain does not entitle a relator to transform public-source lead into whistleblower gold. In the Ninth Circuit, a relator's "inference that the information available amounts to evidence of FCA violation" is not sufficient to constitute material information for purposes of the original source exception to the public disclosure bar. *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1105 (9th Cir. 2017). Put differently, "[a] relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed." *Id.* Such a result applies even if the relator claims some specialized industry knowledge. As another court has put it, "[a] relator cannot manufacture independence merely by identifying fraud in already-public materials using industry expertise." *United States ex rel. Sorgi v. Jazz Pharms. PLC*, 802 F. Supp. 3d 49, 64 (D. Mass. 2025). On the contrary, "the 'independent of and materially adds' requirement is a demanding one," and courts must dismiss a complaint where a relator "synthesized those scattered disclosures into a coherent allegation of fraud." *Id*. Such a rule must apply here. Relator's allegation that it "connected the dots" cannot be sufficient to avoid the public disclosure bar or preclude dismissal.

In sum, Relator's alleged value added to the Government is not material, and it is not an original source. Relator viewed public websites and public forms and then pasted that information into a Complaint. Under these circumstances, the allegations in the Complaint do not meet the requirements to avoid the "public disclosure" bar and, by statute, should be dismissed.

### 3.    The Court Should Dismiss the Complaint with Prejudice

While the dismissing the Complaint, the Court should not grant Relator leave to amend to reassert the same claims, with more information drawn from public sources. When considering whether a relator can obtain leave to amend a complaint otherwise barred through operation of the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT
152998753.1 0056939-00031

-10-

1:24-CV-00928-KES-CDB

public disclosure bar, courts make clear that the relator must allege "additional facts," not included in the initial complaint, demonstrating that the relator has knowledge independent of public disclosures and that this knowledge "materially adds" to what is already public available. *United States ex rel. Smith v. Odom*, 148 F.4th 1322, 1331 (11th Cir. 2025), *cert. denied sub nom. Smith v. Odom*, No. 25-893, 2026 WL 922555 (U.S. Apr. 6, 2026). Moreover, in determining whether to grant leave to amend, courts consider whether an amended complaint includes "any information or facts that were not known, or could not have been known, to Relators at the time the [previous] Amended Complaint was filed." *United States ex rel. MSP WB, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 19-12165, 2024 WL 1316223, at *18 (E.D. Mich. Mar. 26, 2024), *aff'd sub nom. United States ex rel. Michigan v. State Farm Mut. Auto. Ins. Co.*, No. 24-1379, 2025 WL 101639 (6th Cir. Jan. 15, 2025).  This is a high standard to meet, and courts, frequently, deny leave to a relator to amend a complaint in similar circumstances. *See e.g.*, *United States ex rel. Relator LLC v. Erskine*, No. 22CV1158-LL-AHG, 2025 WL 796621, at *7 (S.D. Cal. Feb. 25, 2025) (denying leave to amend); *United States ex rel. MSP WB, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 19-12165, 2024 WL 1316223, at *18 (E.D. Mich. Mar. 26, 2024), *aff'd sub nom. United States ex rel. Michigan v. State Farm Mut. Auto. Ins. Co.*, No. 24-1379, 2025 WL 101639 (6th Cir. Jan. 15, 2025) (denying leave to amend).

This result must apply here. Relator, here, can only obtain leave to amend if it can allege *some* specific additional non-public knowledge regarding E&B, different from what is already available and different from what it knew at the time it filed the Complaint (less than three months ago). But by its own admission, Relator, here, is an "investigative firm" with no connection to E&B, and the events giving rise to its claims occurred four years ago. (FAC ¶¶ 7, 67.) Under these circumstances, granting leave to file an additional amended complaint would be futile.

**B.      The Complaint Should Be Dismissed for Failure to Allege A False Statement Made with Scienter.**

Even if the Relator could avoid the application of the public disclosure bar, the Complaint should still be dismissed, because the facts that Relator has learned online and put in the First Amended Complaint do not sufficiently plead an FCA violation. To withstand a motion to

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND MEMORANDUM IN IN SUPPORT

-11-

1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

dismiss, a complaint must sufficiently plead four elements: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1173 (9th Cir. 2016). Here, Relator fails to allege particularized facts of a false statement and fails to plead plausibly that any false statement was made with scienter.

### 1. Relator Fails to Allege a False Statement with Particularity

To allege that E&B made a false claim, the complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[C]onclusory allegations of fraud are insufficient" to meet this standard. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). On the contrary, the complaint must allege specific facts that "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso*, 637 F.3d at 1055). In some contexts, the particularized pleading requirement is relaxed for plaintiffs who lack inside knowledge. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010). But in the FCA context, it applies with full force, "because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government." *Id.* "Thus," in an FCA case, "to satisfy Rule 9(b), a plaintiff must specify the content of the fraudulent representation, the person who made it, when and where the representation was made, and the manner in which it was untrue and misleading, or the circumstances indicating that it was false." *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1011 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017)

Here, in part because Relator relies on nothing more than public source data, the Complaint does not allege specific facts that E&B made any false statement and why specifically it was false. Relator alleges a single false statement: that in an application for a PPP loan, E&B represented that it had 257 employees. (FAC ¶ 62.) Rule 9(b) requires a particularized allegation of *why* that was false. Relator claims that this statement is false based on three alleged facts (i) E&B's employee benefit plan included more than 300 participants *over the course of a year*; (ii)

E&B failed to properly account for the employees, employed by unspecified "affiliates;" and (iii) a non-party website called ZoomInfo included a hearsay statement on the internet—three years after the allegedly false statement—that E&B had "351 employees across its company and its affiliates." (FAC ¶¶ 68–83.) As a logical and legal matter, none of these assertions are sufficient to establish the falsity of E&B's statements.

First, the SBA does not calculate the number of employees based on participation in an employee benefit plan or even based on the number of individuals employed over a given year. Instead, 13 C.F.R. § 121.106 specifically provides that "[i]n determining a concern's number of employees," the SBA looks at the average number of employees for "*each of the pay periods* for the preceding" 24 months (emphasis added). In other words, pleading falsity regarding the number of employees, for purposes of applicable SBA regulations, requires allegations regarding each *pay period*.

Here, the comparison of the PPP employee count to the Form 5500 participant count does not plead a false statement because the numbers are the result of different formulae. First, when an employer has turnover from quarter to quarter over the course of a year, its Form 5500 may state an annual plan participant number that is higher than the number of employees that it had at any one time in that year. Second, "active participants," as defined in the Form 5500, includes not only individuals who are "currently in employment" but also individuals "*retaining credited service* under the plan." (*See* Request for Judicial Notice and Notice of Incorporation ("RJN") ¶ 2, Ex. 2 ("Form 5500 Instructions," at 19.) This means that, if an employee had worked at E&B during the preceding year or before that year, and still had some vested balance in the plan, he or she must be counted as "an active participant." The only such former employees who are excluded from the count of participants are individuals who are "nonvested" or who "received a cash-out distribution or deemed distribution of their entire" benefit. (*Id.*) But other individuals, with vested balances, remain "active participants."  And, because the E&B plan provides that "[p]articipants are immediately vested in their voluntary contributions," the number of "active participants" necessarily includes individuals who are vested but have not yet taken a full distribution of their benefits. (RJN ¶ 3, Ex. 3 (2021 Form 5500), at 30.)  Accordingly, the number

of "active participants" in E&B's employee benefits plans necessarily exceeds the E&B's number of employees for each pay period. Allegations regarding the stated number of 2021 "active participants" in E&B's Form 5500 cannot prove that any representation that E&B made regarding its number of employees was somehow false. Because the forms do not count the same thing, inconsistency between them is not a particularized allegation of a false statement.[4]

Allegations in the complaint regarding "affiliates" to E&B are not sufficient to show falsity. Generally, "courts decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law." *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008). The "applicable law" is the definition of "affiliate" for purposes of the PPP Loan program under 13 C.F.R. § 121.301. This regulation provides that "entities are affiliates of each other when one controls or has the power to control the other." 13 C.F.R. § 121.103. Under Rule 9(b), where a relator fails to allege facts showing affiliation within the meaning of the SBA's regulation, the complaint should be dismissed. *United States v. Associated Foreign Exch. Inc.*, No. 2:24-CV-10086-SB-BFM, 2026 WL 790778, at *3 (C.D. Cal. Mar. 13, 2026). Ignoring this requirement, the Complaint alleges that something called the "Galesi Group" "owns E&B Natural Resources" and that several other entities, unrelated to this case are managed by a non-party individual, David Buicko. (Compl. ¶ 55.) But these allegations cannot be sufficient to show that any third party controls *both* E&B and any other relevant entity. For instance, the Complaint repeatedly alleges that David Buicko managed or directed many different entities. (Compl. ¶ 55.) But there are no allegations that David Buicko managed or directed *E&B*, itself—the only entity at issue in *this* case. (Compl., *passim*.) Likewise, the Complaint includes a conclusory allegation that "the Galesi Group" owned E&B. But the Complaint includes no allegations what this legal conclusion actually means in the context of this

---

[4] Implicitly recognizing that participation in an employee benefit plan does not accurately account for the number of employees pursuant to SBA regulations, the Complaint cites language in the Form 5500 that the number of participants in the employee benefit plan excludes employees under the age of 18, those covered by a collective-bargaining agreement, leased employees, and non-resident aliens. (Compl. ¶ 77.) But there are no allegations—nor could there be—that E&B actually employed any individuals in any of these categories. As a result, these allegations are irrelevant to the issues in this case or the falsity of any statements.

case, and it does not show that the "Galesi Group" controlled or had the power to control E&B or any other entity. On the contrary, the only allegations regarding control are that David Buicko was the CEO of the Galesi Group and that David Buicko managed other entities but not E&B. Indeed, there are no allegations (nor could there be any) that the "Galesi Group" is even a legal entity, at all, much less one that exercised control over E&B. As a result, the Complaint does not include any non-conclusory allegations sufficient to show "affiliation" within the meaning of the applicable regulation.

Other courts have dismissed similar allegations on far more specific factual allegations. In *Associated Foreign Exchange*, 2026 WL 790778, the Court, as here, considered whether a party had sufficiently alleged affiliation to show falsity based on the number of employees required for a PPP loan. There, the complaint alleged that two entities had overlapping directors (somewhat akin to the allegations here) and shared a headquarters (which is not even alleged in this case). *Id.* at *3. But, in that case, the court held that the Relator had not "explain[ed] how these facts establish the type of "control" required by § 121.103 under the totality of the circumstances" and dismissed the claims for failure to allege falsity. *Id.* A similar result must apply here. The Complaint alleges, vaguely, that "the Galesi Group" owns E&B, but it includes no facts regarding how the Galesi Group controls E&B or any other entity. Unlike the relator in *Associated Foreign Exchange*, the Relator, here, includes no allegations that E&B somehow shared office space or worked together with any other entities, and unlike the relator in *Associated Foreign Exchange*, the Relator does not allege common officers—much less that there are a "totality of circumstances" showing common control of E&B and any other entity. As a result, the Complaint does not allege sufficient facts to show "control" within the meaning of SBA regulations and cannot show falsity based on any kind of "affiliation" theory.

Finally, in passing, the Complaint alleges that, in July 2024, years after the allegedly false statement, a public webpage "ZoomInfo," reported that E&B has "351 employees across its company and its affiliates." (Compl. ¶ 82.) But this allegation has no relevance to E&B's number of employees during each pay period preceding *2021*, the year of the Second Draw PPP loan. And there are no allegations regarding the accuracy of "ZoomInfo" or how any of its statements have

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                    -15-                    1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

any relevance to the number of employees determined by SBA regulations or statement that E&B made on any Form 2483-SD. This conclusory, irrelevant, public statement cannot be sufficient to state a claim for falsity under applicable law.

### 2.    Relator Fails to Allege Sufficient Plausible Facts to Show Scienter

Even if the Complaint's allegations could be sufficient to show falsity, the Complaint does not allege facts sufficient to plausibly plead the requisite scienter.  The FCA provides that relator bears the burden to show "actual knowledge, "deliberate ignorance," or "reckless disregard" of falsity. 31 U.S.C. § 3729(b)(1)(A). Unlike the "circumstances constituting fraud," intent and knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). But, because general pleading requirements under Rule 8 still apply, allegations of scienter must include "*factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). In other words, a complaint "must set out sufficient *factual matter* from which a defendant's knowledge of a fraud might reasonably be inferred." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679–80 (9th Cir. 2018) (emphasis added); *see also*, *United States v. Baxter*, No. 23-CV-00336-WHO, 2025 WL 1343076, at *6 (N.D. Cal. May 8, 2025) (holding that "relator must plead *facts* that demonstrate that defendants acted with knowledge of the falsity and with intent to deceive" (citation modified)). The Relator cannot rely on "conclusory statements" to make this showing. *Baxter*, 2025 WL 1343076, at *6.

The factual allegations must support an inference of more than negligence: "[u]nder the False Claim Act's scienter requirement, 'innocent mistakes, mere negligent misrepresentations and differences in interpretations' will not suffice to create liability." *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011), quoting *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).  In other words, "[a] contractor relying on a good faith interpretation of a regulation is not subject to liability . . . because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999). Put more bluntly, "[f]or a certified statement to be 'false' under the [False Claims] Act, it must be an intentional, palpable lie."

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                    -16-                    1:24-CV-00928-KES-CDB

152998753.1 0056939-00031

*United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). And general allegations of intentional lying must be accompanied by factual allegations to make them plausible.

In this case, the Complaint includes no non-conclusory allegations to support its conclusory allegation of scienter. On the contrary, the *only* allegations that E&B acted with any state of mind simply restate the legal standard, without making any factual allegations, at all. The Complaint alleges that "E&B deliberately ignored the fact that the total number of its and its affiliates' employees" was larger than the number listed and that E&B "signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth." (Compl. ¶ 64.) These are exactly the kind of vague, conclusory allegations that courts reject. *See e.g.*, *Corinthian Colleges*, 655 F.3d at 997 (holding that complaint "does not, however, clearly allege sufficient facts to support an inference or render plausible" that defendant acted with requisite scienter); *see also* *Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 67 (9th Cir. 2020) (affirming dismissal based on Relator's failure to plead sufficient facts that "would warrant a plausible inference" of scienter). The Court cannot reach any other result here. Because there are no non-conclusory allegations whatsoever that E&B somehow acted with "actual knowledge," "deliberate indifference," or "reckless disregard," the Court must dismiss Relator's claims for failure to allege sufficient facts to show scienter.

The Complaint's failure to allege facts supporting scienter are all the more glaring for its failure to particularize who supposedly had scienter. The FCA requires that some individual agent of an entity had the requisite scienter. *See, e.g., United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1275 (D.C. Cir. 2010) ("We know of no circuit that has applied the 'collective knowledge' theory to the FCA."). As set forth above, Rule 9(b) requires that the Complaint identify that person. And to plead plausibly, Relator must allege that the person who signed the PPP loan applications—or at least someone who directed him to do so—acted with the requisite intent. *United States ex rel. Durkin v. Cnty. of San Diego*, No. 15CV2674-MMA (WVG), 2018 WL 3361148, at *6 (S.D. Cal. July 10, 2018). Here, there are no allegations regarding *who* signed the SBA Form 2483-SD, much less any factual allegations to suggest that such individual acted with any state of mind, at all. Under these circumstances, Relator has clearly not alleged that

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND MEMORANDUM IN IN SUPPORT
152998753.1 0056939-00031

-17-

1:24-CV-00928-KES-CDB

E&B—or any individual associated with E&B, made any false statement with "actual knowledge," "deliberate ignorance," or "reckless disregard." And because there are no such factual allegations, the Court must dismiss the Complaint.

## C.    Relator's "Reverse False" Claim Should Be Dismissed

Leaving aside the deficiencies in the Complaint as a whole, Relator's Third Claim for Relief, under 31 U.S.C. § 3729(a)(1)(G), fails for a separate independent reason: because it is a redundant "reverse" false claim, asserted without any independent factual support. Generally, the FCA prohibits the submission of false claims that induce the Government into making an improper payment. *See* 31 U.S.C. § 3729(a)(1). However, the FCA also creates a cause of action for "reverse" false claims. *Id.*, § 3729(a)(1)(G). The reverse false claim provision of the FCA "imposes liability where one knowingly makes (or causes to be made) a false statement to avoid having to pay money to the government." *United States v. Mariner Health Care, Inc.*, 552 F. Supp. 3d 938, 952 (N.D. Cal. 2021).

Importantly, while the "direct" false claims provisions of the FCA punish a person's fraudulent receipt of money from the Government, the reverse false claims provision of the FCA punishes a person's failure to pay money that is owed to the Government. *Cafasso*, 637 F.3d at 1056. Because the direct and reverse false claims provisions of the FCA are intended to address different types of conduct, federal courts have routinely dismissed reverse FCA claims that are based upon the same set of facts as the direct FCA claims. *See*, *e.g.*, *United States v. Kinetic Concepts, Inc.*, No. CV0801885BROAGRX, 2017 WL 2713730, at *13 (C.D. Cal. Mar. 6, 2017) (holding that "[i]n cases where a plaintiff alleges a reverse false claim by claiming that the defendant fraudulently overcharged the government and then failed to repay the government, courts have consistently dismissed the claim as redundant of false statement and presentment claims"). Such a rule makes sense as a matter of statutory interpretation. Any other result would render the reverse false claims provision of the FCA superfluous by allowing every direct FCA claim to also give rise to a reverse FCA claim. *See U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) ("Congress' purpose in enacting subsection [(a)(1)(G)] was to ensure that one who makes a false statement in order to avoid paying money owed the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                    -18-                    1:24-CV-00928-KES-CDB
152998753.1 0056939-00031

Government would be equally liable under the Act as if he had submitted a false claim to receive money. Its purpose was not to provide a redundant basis to state a false statement claim under subsection [(a)(1)(B)]." (citation modified)).

**1.  Relator's Third Cause of Action Is Redundant of Its First and Second Causes of Action.**

Relator's Third Cause of Action, pursuant to 31 U.S.C. § 3729(a)(1)(G), is redundant of its First and Second Causes of Action. A relator may not simply recast its direct FCA claims as reverse FCA claims. Put simply, "an actionable reverse false claim cannot be based on a defendant's failure to *refund* the *same* payment that was obtained by an actionable false claim." *Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1119 (D. Haw. 2021).

Here, Relator's First and Second Causes of Action are direct FCA claims under 31 U.S.C. §§ 3729(a)(1)(A) and (B) based solely upon the allegations that E&B submitted a false claim for payment to the SBA by falsely representing it had 300 employees. (Compl. ¶¶ 84–94.) Relator's Third Cause of Action, under 31 U.S.C. § 3729(a)(1)(G), which is based on the exact same set of facts, is the inverse of Relator's First and Second Causes of Action. (Compl. ¶¶ 95-100.). In other words, Relator is alleging that E&B failed to refund same payment that it allegedly obtained through fraud. This type of redundant FCA claim is not actionable, as a matter of law, and therefore must be dismissed.

**2.  Relator Fails to Plausibly Allege that E&B Made Any False Statement or Concealed or Knowingly and Improperly Avoided or Decreased an Obligation to Pay Money or Property to the Government**

Even Relator's cause of action under 31 U.S.C. § 3729(a)(1)(G) were not redundant of its first two causes of action, it should be dismissed for the additional straightforward reason that it relies on no specific facts showing that E&B did anything to avoid any obligation to repay the Government. To plead a claim under Section 3729(a)(1)(G), a plaintiff must allege a "false record or statement" to an "obligation to pay or transmit money or property to the Government" or that a defendant "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." *Id.*

However, Relator's pleadings are devoid of any plausible facts to support an allegation that E&B was ever aware of any alleged obligation to pay back the Government, let alone that it knowingly concealed, avoided, or decreased any alleged obligation. For example, Relator does not allege the SBA ever sent E&B any notice or correspondence advising that its receipt of the Second Draw loan proceeds was improper. Similarly, Relator does not allege the SBA ever notified E&B that it needed to pay back the full amount of the Second Draw loan. Instead, Relator alleges that "the U.S. government forgave 100%" of E&B's Second Draw Loan without any apparent action or communication from E&B at all. (FAC ¶ 67.) Relator includes only the conclusory statement that E&B "knew" of its obligation to pay back the SBA and "improperly avoided" that obligation. (*Id.* ¶ 97.) These types of allegations are clearly insufficient under Rule 9(b) or Rule 12(b)(6) to state a reverse FCA claim under 31 U.S.C. § 3729(a)(1)(G). Therefore, Relator's cause of action under 31 U.S.C. § 3729(a)(1)(G) must be dismissed for this reason as well.

## V.  CONCLUSION

For the reasons set forth above, E&B respectfully requests that the Court dismiss Relator's First Amended Complaint with prejudice.

DATED:  May 15, 2026

STOEL RIVES LLP

 s/ Jacob C. Goldberg
MATTHEW D. SEGAL (190938)
matthew.segal@stoel.com
Telephone: (916) 447-0700
JACOB C. GOLDBERG (310862)
jacob.goldberg@stoel.com
Telephone: (503) 224-3380

*Attorneys for Defendant*

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DEF'S MOTION TO DISMISS AND
MEMORANDUM IN IN SUPPORT                    -20-                    1:24-CV-00928-KES-CDB

152998753.1 0056939-00031