MATTHEW D. SEGAL, Bar No. 190938
matthew.segal@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone:  916.447.0700
Facsimile:  916.447.4781

JACOB C. GOLDBERG, Bar No. 310862
jacob.goldberg@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. VERITY INVESTIGATIONS, LLC,<br><br>Plaintiff Relator,<br><br>v.<br><br>E&B NATURAL RESOURCES MANAGEMENT CORPORATION,<br><br>Defendant. | Case No. 1:24-cv-00928-CDB<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Date:      July 6, 2026<br>Time:      10:30 a.m.*<br>Location:  Zoom*<br>Judge:     Hon. Christopher D. Baker<br><br>*Time and location reset per ECF Minute Order 54 |

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS

153200312.3 0056939-00031

1:24-CV-00928-CDB

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ................................................................................................................1

      A.    The Opposition Confirms that the Public Disclosure Bar Requires Dismissal. ...............................................................................................................1

           1.    The Statute Requires Dismissal and the Evidentiary Burden Is Not Relevant. .......................................................................................................1

           2.    The Sources Cited in the Complaint Have Been Publicly Disclosed..........2

                a.    The Form 5500 Return/Report is a Federal Report.........................2

                b.    Information Regarding PPP Loans Constitutes Federal Reports and News Media ..................................................................6

                c.    Information on the Galesi Group Website Constitutes News Media .................................................................................................7

           3.    Substantially the Same Allegations Were Publicly Disclosed....................9

           4.    Relator Is Not an Original Source.............................................................11

      B.    The Complaint Does Not Meet the Pleading Standards for Falsity Under Rule 9(b) or Scienter Under Rule 8 ...........................................................12

           1.    Relator Fails to Allege Why Any Statement by E&B Is False .................12

           2.    Relator Alleges No Facts Sufficient to Show Scienter ...........................13

      C.    The Complaint Does Not Plead a Reverse FCA Claim .......................................14

III. CONCLUSION..............................................................................................................15

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
-i-
1:24-CV-00928-CDB

153200312.3 0056939-00031

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Allergan, Inc.*,
 46 F.4th 991 (9th Cir. 2022) ......................................................................................... 3, 7

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
 856 F.3d 696 (9th Cir. 2017)............................................................................................. 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................ 13

*United States v. Baxter*,
 No. 23-CV-00336-WHO, 2025 WL 1343076 (N.D. Cal. May 8, 2025) ......................... 10

*United States ex rel. Beauchamp v. Academi Training Ctr., LLC*,
 816 F.3d 37 (4th Cir. 2016)............................................................................................... 1

*Cause of Action v. Chicago Transit Auth.*,
 815 F.3d 267 (7th Cir. 2016), *Cause*.............................................................................. 11

*Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*,
 561 U.S. 661 (2010) .......................................................................................................... 1

*United States ex rel. Craig v. Hawthorne Machinery Co.*,
 No. 20-cv-1625-WQH-AHG, 2024 WL 4294878 (S.D. Cal. Sept. 25, 2024).............. 5, 11

*Dixon v. United States*,
 548 U.S. 1 (2006)............................................................................................................... 1

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
 559 U.S. 280 (2010)........................................................................................................... 5

*United States ex rel. Green v. Serv. Cont. Educ. & Training Tr. Fund*,
 843 F. Supp. 2d 20 (D.D.C. 2012) .................................................................................... 8

*Hong v. Newport Sensors, Inc*,
 728 F. App'x 660 (9th Cir. 2018) ...................................................................................... 8

*United States ex rel. Hong v. Newport Sensors, Inc.*,
 No. SACV 13-1164-JLS, 2016 WL 8929246 (C.D. Cal. May 19, 2016),
 *aff'd sub nom. United States ex rel. Juan Hong v. Newport Sensors, Inc*,
 713 F. App'x 724 (9th Cir. 2018) ...................................................................................... 7

*United States ex rel. Hopper v. Anton*,
 91 F.3d 1261 (9th Cir. 1996)........................................................................................... 13

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                    -ii-                    1:24-CV-00928-CDB

153200312.3 0056939-00031

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
  2019 WL 3282619 (C.D. Cal. July 16, 2019) ........................................................................ 3

*United States v. Janssen Biotech, Inc.*,
  576 F. Supp. 3d 212 (D.N.J. 2021) ................................................................................... 5, 6

*United States ex rel. Jones v. Sutter Health*,
  499 F. Supp. 3d 704 (N.D. Cal. 2020) ............................................................................... 11

*United States v. Kasam*,
  No. 2:22-CV-05198-HDV-JCX, 2025 WL 3724905 (C.D. Cal. Dec. 11, 2025) .................. 3, 6

*United States ex rel. Kraxberger v. Kan. City Power & Light Co.*,
  756 F.3d 1075 (8th Cir. 2014) ............................................................................................. 1

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ............................................................................................... 8

*United States ex rel. Mateski v. Raytheon Co.*,
  816 F.3d 565 (9th Cir. 2016) ............................................................................................... 9

*U.S., ex rel. Modglin v. DJO Glob. Inc.*,
  114 F. Supp. 3d 993 (C.D. Cal. 2015),
  *aff'd sub nom. United States v. DJO Glob., Inc.*,
  678 F. App'x 594 (9th Cir. 2017) ....................................................................................... 14

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ............................................................................................. 12

*United States ex rel. Osheroff v. Humana, Inc.*,
  776 F.3d 805 (11th Cir. 2015) ......................................................................................... 1, 8

*Prather v. AT&T, Inc.*,
  847 F.3d 1097 (9th Cir. 2017) ............................................................................................. 9

*United States ex rel. Relator LLC, v. Cardinalli*,
  No. 5:23-cv-00113-HDV-DTB, 2025 WL 4036760 (C.D. Cal. Sept. 15, 2025) ................ 6, 7

*United States ex rel. Relator LLC v. Nations Direct Mortg., LLC*,
  No. 2:22-cv-04784-SPG-MAA, 2026 WL 453464 (C.D. Cal. Jan. 5, 2026) ...................... 6, 7

*United States ex rel. Relator LLC v. Sunshine*,
  No. 8:23-CV-00134-JVS-ADS, 2025 WL 2428470 (C.D. Cal. June 30, 2025) ..................... 6

*United States ex rel. Relator, LLC v. Kootstra*,
  No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) .................. 3, 6

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                                    -iii-                                    1:24-CV-00928-CDB

153200312.3 0056939-00031

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*,
    739 F. Supp. 2d 396 (S.D.N.Y. 2010)........................................................................... 3

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013).................................................................................... 12

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    563 U.S. 401 (2011) ....................................................................................... 3, 4, 5, 7

*Serafin v. Realmark Holdings, LLC*,
    797 F. Supp. 3d 1075 (N.D. Cal. 2025) ..................................................................... 13

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
    89 F.4th 1154 (9th Cir. 2024) ................................................................................ 6, 10

*United States ex rel. Simpson v. Bayer Corp.*,
    No. CIV.A. 05-3895 JLL, 2013 WL 4710587 (D.N.J. Aug. 30, 2013) ...................... 8

*United States ex rel. Stebbins v. Maraposa Surgical, Inc.*,
    No. 24-1626, 2024 WL 4947274 (3d Cir. Dec. 3, 2024)......................................... 3, 4

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*,
    512 F. Supp. 3d 1096 (D. Haw. 2021) ....................................................................... 15

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
    931 F.3d 966 (9th Cir. 2019)........................................................................................ 2

*United States v. Uhler*,
    No. 2:23-CV-00499-CAS-MBKX, 2025 WL 4350115 (C.D. Cal. Oct. 6, 2025) .................. 11

**Federal Statutes**

29 U.S.C. § 1024(a)(1)........................................................................................................ 4

31 U.S.C. § 3729(a)(1)(G) ............................................................................................... 14

31 U.S.C. § 3730................................................................................................................. 9

31 U.S.C. § 3730(e)(4)(A) ............................................................................................. 1, 2

ERISA .................................................................................................................................. 4

FOIA ............................................................................................................................... 3, 5

**State Statutes**

CARES Act .......................................................................................................................... 7

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS        -iv-        1:24-CV-00928-CDB

153200312.3 0056939-00031

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

False Claims Act ................................................................................................................ 14

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................ 12

Fed. R. Civ. P. 9(b) ...................................................................................................... 12, 13

**Regulations**

88 Fed. Reg. 11984-01 (Feb. 24, 2023) ............................................................................ 4

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS

-v-

1:24-CV-00928-CDB

153200312.3 0056939-00031

## I.  INTRODUCTION

In its Opposition to the Motion to Dismiss ("Opposition" or "Opp."), Relator Verity Investigations, LLC ("Relator") confirms that it has no connection to or specific knowledge of Defendant E&B Natural Resources Management Corporation ("E&B"), that its sources are all publicly available, and that its only evidentiary contribution in this case consists of copying public data. Thus, the Opposition makes clear that the First Amended Complaint ("FAC") should be dismissed. First, the public disclosure bar applies. All of the information that Relator uses to support its claims has been publicly disclosed through one of the channels specified in the statute, and Relator adds no independent facts beyond these public sources. Second, the complaint cannot meet applicable pleading standards. Third, the Opposition acknowledges that there are no facts sufficient to plead a reverse false claim act. The Court should dismiss the FAC.

## II.  ARGUMENT

### A.    The Opposition Confirms that the Public Disclosure Bar Requires Dismissal.

#### 1.    The Statute Requires Dismissal and the Evidentiary Burden Is Not Relevant.

The language in the public disclosure bar is mandatory: "[t]he court ***shall dismiss*** an action or claim under this section" if the same allegations or transaction were "publicly disclosed." 31 U.S.C. § 3730(e)(4)(A) (emphasis added).

It does not matter whether, as Relator contends, the public disclosure bar is an affirmative defense, and the "burden" falls on E&B. (Opp. at 5.) The same cases that describe the public disclosure bar as an affirmative defense actually affirm district courts' dismissal orders. *See United States ex rel. Beauchamp v. Academi Training Ctr., LLC*, 816 F.3d 37, 40 (4th Cir. 2016); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 816 (11th Cir. 2015); *United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014). Moreover, here, the burden of proof has no effect, because Relator admits where it conducted its "investigation." *See Dixon v. United States*, 548 U.S. 1, 8 (2006); *see also Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 678 (2010) (noting that when facts are stipulated, it dispenses wholly "with the need for proof of the" fact.) The Court need only refer to Relator's Opposition section entitled, "How Verity Detected E&B's

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                                        -1-                              1:24-CV-00928-CDB

153200312.3 0056939-00031

[alleged] Fraud" and its FAC section entitled "No 'Public Disclosure' and Relator Is An Original Source," Relator *admits* all of the factual predicates relevant to the public disclosure bar:

- Relator obtained "publicly available data regarding E&B's Second Draw PPP loan." Opp. at 3; FAC ¶¶ 5, 62.
- Relator "sourced the Department of Labor's public database" to locate publicly filed and disclosed Form 5500s, including a "Report of Auditors" attached to this form. *Id.*; FAC ¶¶ 72-74.
- Relator "investigated" the Galesi Group's website, a publicly available promotional webpage that includes information available in other published news sources. *Id.*; FAC ¶¶ 52-55.
- Relator "synthesiz[ed]" what it calls "data points" (public sources) to allege fraud. *Id.* at 4; FAC ¶ 28.

Simply put, in its Opposition, as well as the FAC, Relator acknowledges exactly the public sources it relied upon. In this circumstance, as the Ninth Circuit has made clear, "dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019). Because the FAC establish all of the relevant facts related to public disclosure bar, the "burden" is irrelevant at this stage.

**2.    The Sources Cited in the Complaint Have Been Publicly Disclosed**

All of Relator's sources qualify as "public disclosures" under the channels identified in the statute. Form 5500 information filed with, and published by, the Department of Labor are "federal reports." Information related to PPP loans and forgiveness of PPP loans constitutes both "federal reports" and "news media." Information on the Galesi Group website constitutes "news media."

**a.    The Form 5500 Return/Report is a Federal Report**

The FCA requires dismissal if the "same allegations or transactions" were "publicly disclosed" in a "Federal *report*, hearing, audit, or investigation." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). Interpreting the term "report" in the FCA, the Supreme Court has noted that a

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS
153200312.3 0056939-00031

-2-

1:24-CV-00928-CDB

"a 'report' is 'something that gives information' or a 'notification'" and that a "broad ordinary meaning of 'report' is consistent with the generally broad scope of the FCA's public disclosure bar." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011).[1] Consistent with this interpretation, the Supreme Court holds that "[a]ny records" that an "agency produces" in response to a FOIA request constitute a "report" for "purposes of the public disclosure bar." *Id.* at 411.  The Court has expressly rejected the argument that a federal report is not created when an agency "merely assembled and duplicated records." *Id.* at 418 (J. Ginsburg, dissenting). The public disclosure bar exists to prevent "anyone [who] could identify a few regulatory filing and certification requirements" from "reap[ing] a windfall in a *qui tam* action." *Id.* at 413. Thus, the Supreme Court has rejected the proposition that Relator now urges—that an agency must "do work" or "create" a document for it to constitute a report.

Lower courts follow this reasoning to hold that a "database" on a government website (like the Department of Labor's searchable database of Form 5500s at issue here) constitutes a "report" regardless of whether the federal government does any work to create this information. For example, Chief Judge Nunley has applied this reasoning to hold that PandemicOversight.gov is a "federal report." *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470, at *4 (E.D. Cal. Aug. 6, 2024); *United States v. Kasam*, No. 2:22-CV-05198-HDV-JCX, 2025 WL 3724905, at *3 (C.D. Cal. Dec. 11, 2025) (holding that "Courts, including this Court, have consistently held that publicly-accessible federal databases of this kind qualify as 'federal reports' under the FCA"). The principle applies broadly. *See United States ex rel. Stebbins v. Maraposa Surgical, Inc.*, No. 24-1626, 2024 WL 4947274, at *3 (3d Cir. Dec. 3, 2024) (holding that online databases of physicians constitute a report); *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, 2019 WL 3282619, at *6 (C.D. Cal. July 16, 2019) (holding that "raw data" constitutes a "report" for purposes of FCA); *United States ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*, 739 F. Supp. 2d 396, 407 (S.D.N.Y. 2010)

___

[1] Although *Schindler* addressed a previous version of the statute, the Ninth Circuit continues to rely on *Schindler* for purposes of interpreting the FCA and the term "report" is included in both versions of the statute. *See e.g.*, *United States v. Allergan, Inc.*, 46 F.4th 991, 997 (9th Cir. 2022).

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                    -3-                    1:24-CV-00928-CDB

153200312.3 0056939-00031

(holding that database on government website is a "report" under public disclosure bar). The FCA does not permit suits in cases where "anyone could access this publicly available information about the transactions [and] could file the same suit." *United States ex rel. Stebbins*, 2024 WL 4947274, at *3.

These cases confirm that Form 5500s, information that the federal government makes public in a searchable database, are reports. Form 5500s do give information and do give notification. They are posted, searchable, and accessed, on public government websites databases. The rule articulated in *Schindler* and nearly all of the cases interpreting the term "report" require that this Court conclude that Form 5500s constitute reports.

To the extent that authority regarding what constitutes a report does not resolve the issue, ERISA—the statute authority for the filing and disclosure of Form 5500s—and agency guidance confirm that such documents are "reports." Under ERISA, "[t]he administrator of any employee benefit plan . . . shall file with the Secretary the ***annual report*** for a plan year . . . [and] [t]he Secretary ***shall make*** copies of such annual reports available for inspection in the public document room of the Department of Labor." 29 U.S.C. § 1024(a)(1) (emphasis added). Moreover, agency guidance shows that making these reports available to the public is not a costless or passive undertaking and that disclosure serves an important public function. "The total annual processing cost for all Form 5500 Series and Form PR filings" is "estimated to average $14.2 million annually."[2] "The Form 5500 Annual Return/Report serves as the principal source of information and data available to" agencies and to the "regulated community, which makes increasing use of the information as more capabilities develop to interact with the data electronically." Annual Information Return/Reports, 88 Fed. Reg. 11984-01 (Feb. 24, 2023). In short, the statutory language authorizing the collection and dissemination of Form 5500s, the resources dedicated to maintaining the searchable database, and regulations describing the use of the Form 5500s all show that these documents are "reports" within the broad meaning of the term in the FCA.

---

[2] Office of Management and Budget, Annual Return/Report of the Employee Benefit Plan (Form 5500), OMB Control No. 1210-0110, *available at* reginfo.gov/public/do/PRAViewDocument?ref_nbr=202601-1210-003

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS
153200312.3 0056939-00031

-4-

1:24-CV-00928-CDB

Relator ignores all of this and relies on a series of inapposite propositions or caselaw. First, it claims that "the canon of *noscitur a sociis* . . . indicates that the statutory term 'other Federal report' must be read consistent with *the other words in channel (ii)*[.]" (Opp. at 6.) But the Supreme Court has already foreclosed that very application of *noscitur a sociis* to the public disclosure bar twice—and instead adopted a broad interpretation of "report" consistent with its ordinary meaning. *See Schindler*, 563 U.S. at 409 (holding that the Second Circuit improperly applied *noscitur a sociis* "only to the immediately surrounding words, to the exclusion of the rest of the statute," and erred in narrowing the meaning of "report" to exclude FOIA responses.); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288–89 (2010) (rejecting narrow application of *noscitur a sociis* to a "a list of three items" rather than "the larger scheme of the public disclosure bar").

Second, Relator cites *United States ex rel. Craig v. Hawthorne Machinery Co.* and argues that the district court there "denied the motion to dismiss . . . finding that the Form 5500 was not sufficient to carry defendant's burden [required by the public disclosure bar]." (Opp. at 6-26.) But in *Hawthorne*, the defendant failed to argue "how [the] documents fit within any of the statute's channels." No. 20-cv-1625-WQH-AHG, 2024 WL 4294878, at *12 (S.D. Cal. Sept. 25, 2024). And, in *Hawthorne*, the relator relied on "non-public emails . . . and [Defendant's] non-public payroll information" in addition to Form 5500 to support its claim. *Id.* at *13. Under those facts, the court never resolved the question of whether Form 5500 fell into any of the three channels under the act. *See id.* (holding only that relator's sources "appear" not to fall within channels "at this stage"). Thus, *Hawthorne* does not stand for the proposition that a Form 5500, or any other information disclosed to the federal government, categorically falls outside of the criteria of being a "Federal report" for purposes of the public disclosure bar.

Finally, Relator cites two cases involving information that is part of a "hearing" and that do not directly address the issue here. In *Janssen*, the court held that patent review petitions were not "Federal Reports" for the purposes of the public disclosure bar, only because it held that these patent proceedings were a "hearing" specifically excluded from the statute. *See United States v. Janssen Biotech, Inc.,* 576 F. Supp. 3d 212, 225–26 (D.N.J. 2021) (providing that Congress

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS

-5-

1:24-CV-00928-CDB

153200312.3 0056939-00031

limited "channel (i) to federal hearings to which the Government is a party" and finding that if petitions from *ex parte* proceedings were "Federal reports," it would "sweep[] materials obviously excluded from channel (i) back in under channel (ii).") Similarly, in *Valeant,* the court also construed information that was disclosed during an adversarial patent proceeding and, unremarkably, noted that such information did not constitute a report. *See Silbersher v. Valeant Pharms. Int'l, Inc*., 89 F.4th 1154, 1166 (9th Cir. 2024) (holding that information "was to render a decision between Valeant and [a petitioner]" rather than a "fact-finding or investigatory process 'to obtain information.'") Here, there is no argument that any of the information in the Form 5500s came to light in a "hearing" or any kind of adversarial proceeding. *Janssen* and *Valeant*, accordingly, have no application to this matter.

### b. Information Regarding PPP Loans Constitutes Federal Reports and News Media

Relator admits that it relies heavily on "publicly available data regarding E&B Second Draw PPP loan." (Opp. at 3.) This "publicly available data" constitutes both a "federal report" and also news media within the meaning of the statute.

E&B's SBA loan information, like the information of other SBA borrowers, was made available through the website, PandemicOversight.gov, which is a "federal report." *Kootstra*, 2024 WL 3666470, at *4. It appears that Chief Judge Nunley's holding is consistent with every other court to reach this issue. *See Kasam*, 2025 WL 3724905, at *3; *United States ex rel. Relator LLC, v. Cardinalli*, No. 5:23-cv-00113-HDV-DTB, 2025 WL 4036760, at *3 (C.D. Cal. Sept. 15, 2025) (collecting cases); *United States ex rel. Relator LLC v. Sunshine*, No. 8:23-CV-00134-JVS-ADS, 2025 WL 2428470, at *4 (C.D. Cal. June 30, 2025).[3]

---

[3] Some of these same courts note that a news organization, ProPublica, published the same information and made it available to the public. Supplemental Request for Judicial Notice ("RJN"), ¶ 2, Ex. 4. ProPublica is a "non-profit investigative outlet." *Kasam*, 2025 WL 3724905, at *3. Accordingly, the information it published regarding PPP loans "fits easily within this definition" of news media under the FCA. *Cardinalli*, 2025 WL 4036760, at *3; *see also United States ex rel. Relator LLC v. Nations Direct Mortg., LLC*, No. 2:22-cv-04784-SPG-MAA, 2026 WL 453464, at *3 (C.D. Cal. Jan. 5, 2026) (holding that "ProPublica.org . . . is a news source under [the FCA].").

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS        -6-        1:24-CV-00928-CDB

153200312.3 0056939-00031

Relator attempts to avoid the straightforward conclusion that PPP loan information is a report—adopted by every single court that has ever considered the issue—by examining the function of the Pandemic Response Accountability Committee ("PRAC") and the text of the CARES Act. Relator suggests that information published by the PRAC is not a "report" because PRAC was specifically created to oversee pandemic era relief and detect fraud and because Congress did not use the word "report" when it directed PRAC to make public information regarding PPP loans. (Opp. at 9–10.) This argument is foreclosed by Schindler, which instructs that the term "report" must be construed broadly to include "something that gives information." *Schindler*, 563 U.S. at 407. The CARES Act *requires* the website to provide "information" or "data" to the public.[4] (Opp. at 10.) An FCA public disclosure is no less so if merely because the law requiring it does not use the literal word "report."

In any event, as courts have held, the same PPP borrower information, as disclosed by ProPublica, is disclosed both in a "federal report" and "news media." *See Cardinalli*, 2025 WL 4036760, at *3; *United States ex rel. Relator LLC v. Nations Direct Mortg., LLC*, No. 2:22-cv-04784-SPG-MAA, 2026 WL 453464, at *3 (C.D. Cal Jan. 5, 2026).

### c. Information on the Galesi Group Website Constitutes News Media

Relator contends that information on the Galesi Group website is not "News Media" because the Galesi Group website is a "standard corporate website." (Opp. at 12.) This argument is wrong as a legal and factual matter.

As a legal matter, most legal authority recognizes public webpages as "news media." In fact, in the most authoritative statement it has made on the issue, the Ninth Circuit *affirmed* the Central District of California's holdings that "[i]nformation publicly available on the Internet generally qualifies as 'news media.'" *United States ex rel. Hong v. Newport Sensors, Inc.*, No. SACV 13-1164-JLS (JPRx), 2016 WL 8929246, at *5 (C.D. Cal. May 19, 2016), *aff'd sub*

---

[4] Relator relies on language in *United States v. Allergan, Inc.*, 46 F.4th 991, 998 (9th Cir. 2022) to suggest that even a federal database or website that provides information is not a report. But *Allergan* analyzed whether disclosure constituted a "hearing," not report. *Id.* In any case, *Allergan* endorsed the broad definition of "report" that the Supreme Court had adopted in *Schindler*. *See id.* (citing *Schindler* and approving of its use of dictionary definitions).

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                    -7-                    1:24-CV-00928-CDB
153200312.3 0056939-00031

*nom. United States ex rel. Juan Hong v. Newport Sensors, Inc*, 713 F. App'x 724 (9th Cir. 2018), and *aff'd sub nom. United States ex rel. Hong v. Newport Sensors, Inc*, 728 F. App'x 660 (9th Cir. 2018). Moreover, almost every court has held that "promotional websites," no different than advertisements in traditional media, fall within the definition of "news media." *Humana*, 776 F.3d at 813 (holding that "publicly available websites, which are intended to disseminate information about the clinics' programs, qualify as news media for purposes of the public disclosure provision"); *United States ex rel. Simpson v. Bayer Corp.*, No. CIV.A. 05-3895 JLL, 2013 WL 4710587, at *7 (D.N.J. Aug. 30, 2013) (noting that "a promotional website geared toward the dissemination of information" could be considered news media); *United States ex rel. Green v. Serv. Cont. Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012) (holding that "readily accessible [promotional] websites" qualify as news media).

These holdings make sense for two reasons. First, "the FCA is geared primarily to encourage *insiders* to disclose information necessary to prevent fraud on the government." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (emphasis added). Someone who locates publicly available information on the internet is not an "insider" for purposes of the statute. Second, a "promotional website," like the Galesi Group website in this case, does function like "news media." Just like advertisements in other traditional media, this website includes "customer-directed communications" similar to what a radio or television or magazine advertisement would include. Accordingly, contrary to Relator's contention, it *does* convey the "type of information" found in newspaper or other news outlets and does function like a traditional news outlet.

Indeed, the public information that Relator obtained from the galesi.com promotional website has also been published by the traditional press. Relator acknowledges that, through the website, it "identified E&B and other entities as its affiliates and stated that the Galesi Group owns E&B." (Opp. at 3.)  The website shows only three "affiliates," E&B, Distribution Unlimited, and Waterfront Condominiums. (RJN, Ex. 5.)

This same information was also disclosed in public news media, long before the complaint was filed. Specifically:

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS
153200312.3 0056939-00031

-8-

1:24-CV-00928-CDB

- An article on October 18, 2012 from *Easy Reader & Penninsula Magazine* states that "E&B's owner" is Francesco Galesi and that Galesi "formed E&B Natural Resources." (RJN, Ex. 6.)

- An article dated November 27, 2020 discusses developments by the "Galesi Group" and identifies "Distribution Unlimited" as "Galesi's own distribution company." (RJN, Ex. 7.) A separate article dated September 14, 2015 in the *Albany Bus. Rev.* identifies "Distribution Unlimited" as a "Galesi-owned company." (RJN, Ex. 8.)

- An article dated June 29, 2018 from the *Times Union* discloses that the Galesi Group owns the Water Condominiums. (RJN, Ex. 9.) Another article dated November 1, 2022 from the *Albany Business Review* notes that "waterfront condominiums" are "owned and built by The Galesi Group." (RJN, Ex. 10.)

These facts are widely available on galesi.com and in the online world at large. The information Relator obtained from the Galesi Group website is available in "news media."

### 3.    Substantially the Same Allegations Were Publicly Disclosed

The public disclosure bar applies when "substantially the same allegations" as alleged in the claim have been publicly disclosed. 31 U.S.C. § 3730.  To make this showing, the Ninth Circuit is clear that "the substance of the disclosure need not contain an explicit 'allegation' of fraud, so long as the ***material elements*** of the allegedly fraudulent 'transaction' are disclosed in the public domain." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016) (citation modified). If a reader may "infer" the alleged fraud based on these "material elements," the claims are based on the allegations. *Id.* This inquiry necessarily focuses on *facts* that have been publicly disclosed, not conclusions that can be drawn from these facts or legal analysis based on publicly disclosed facts. *See*, *e.g.*, *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 704 (9th Cir. 2017) (holding that when "enough of the ***underlying facts*** making up the elements of fraud are disclosed, the [public disclosure] bar applies" (emphasis added)); *see also Prather v. AT&T, Inc.*, 847 F.3d 1097, 1105 (9th Cir. 2017) ("[A] relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                    -9-                    1:24-CV-00928-CDB

153200312.3 0056939-00031

alter the fact that the material elements of the violation already have been publicly disclosed." (citation omitted)).

Relator, here, does not claim that it has uncovered *any* facts that were not already public. Instead, it identifies the public sources for every single one of the material facts. (Opp. at 14.) Allegations regarding "affiliates" of E&B are derived from a public news media. (*Id.*) Allegations regarding information on Form 5500 is a federal report. (*Id.*) Allegations regarding E&B's stated number of employees and the substance of its PPP loans are available through federal reports and the news media. (*Id.*) As a result, Relator necessarily admits that all of the underlying facts on which its claims are based are public and depend on public disclosure channels identified in the statute.

Rather than suggest that it has uncovered new facts (which it has not), Relator claims that the complaint is not based on publicly disclosed facts because the inferences that it made were especially complex. It describes a series of "inputs" that it contributed and that supposedly uncovered the alleged fraud. (Opp. at 14-15.) The "inferences" are that E&B has some affiliates—an "inference" that is available from reading public news media—and that the number of participants in E&B's 401(k) plan is more than 300—an "inference" than just involves copying information. Then, the major leap that Relator alleges that it uncovered is that the number listed on the Form 5500 is greater than 300. This is grade school arithmetic, not complex sleuthing.

The cases that Relator cites do not change the analysis; they confirm that a relator must add additional "facts," not superficial or obvious inferences to show that its claims are not substantially the same allegations. In *Valeant*, the relator was a patent lawyer who led a challenge to a patent application based on preexisting medical studies. 89 F.4th at 1163.  The relator, there, was able to compare scientific studies in medical journals with a patent application, was able to compare an earlier patent application with a current patent prosecution, and was able to allege new facts based on an understanding of the available patents and scientific issues. *Id.* at 1168. There, the relator's "allegations provide[d] a critical fact necessary for scienter," and none of the previous disclosures "reveals that fact." *Id.* at 1168. Other cases that Relator cites also include non-public *facts* that a relator uncovered. *See United States v. Baxter*, No. 23-CV-00336-WHO,

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                    -10-                    1:24-CV-00928-CDB

153200312.3 0056939-00031

2025 WL 1343076, at *1 (N.D. Cal. May 8, 2025) (alleging undisclosed fact that defendant limited "public access to its property"); *Hawthorne*, 2024 WL 4294878, at *13 (noting that publicly available data does "not seem to provide any information regarding" employee headcount and that relator relied on private sources including "non-public emails"); *United States v. Uhler*, No. 2:23-CV-00499-CAS-MBKX, 2025 WL 4350115, at *6 (C.D. Cal. Oct. 6, 2025) (noting that "publicly disclosed information does not reveal that SLOGCC is a private club which limits the number of memberships for reasons other than capacity").

In this case, in contrast, Relator relies on no independent facts and its "investigation" involved little more than copying public sources and doing basic arithmetic. Under these circumstances, substantially the same transaction has been publicly disclosed for purposes of the public disclosure bar.

### 4.    Relator Is Not an Original Source

For similar reasons that substantially the same transaction has been publicly disclosed, Relator cannot claim that it is an "original source." To make such a showing, Relator must have knowledge that is "independent of and materially adds" to the publicly disclosed allegations. *United States ex rel. Jones v. Sutter Health*, 499 F. Supp. 3d 704, 717 (N.D. Cal. 2020). This "requirement of 'independent' and 'material' knowledge is a meaningful hurdle to overcoming the public disclosure bar." *Id.* (citation modified). To satisfy this hurdle, a "relator's knowledge of the alleged wrongdoing must not 'derive from or depend upon' the public disclosure." *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 283 (7th Cir. 2016) (citation modified).[5] Instead, "the relator must be 'someone who would have learned of the allegation or transactions *independently of the public disclosure*.'" *Id.* (emphasis added) (citation omitted). Relator does not even come close to meeting this standard. By its own admission, Relator derived its knowledge *entirely* from public sources and merely "synthesized" this public information to form its claims. (Opp. at 4.) It did not learn about any alleged fraud independent of any public information. As a

---

[5] *Cause of Action* applied the 2010 language regarding the public disclosure bar to its analysis. *Cause of Action*, 815 F.3d at 283 n.22. This case, accordingly, cannot be distinguished by legislative changes.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS

-11-

1:24-CV-00928-CDB

153200312.3 0056939-00031

result, there is no viable argument that it is an original source—and the public disclosure bar requires dismissal of its claims.[6]

## B.    The Complaint Does Not Meet the Pleading Standards for Falsity Under Rule 9(b) or Scienter Under Rule 8

Given that Relator has no independent information or facts regarding E&B or the transaction relevant to this matter, it is also not surprising that the Complaint fails to specifically plead falsity and fails to allege ultimate facts sufficient to show scienter.  This is true because, in both instances, Relator alleges conclusions, not facts.

### 1.    Relator Fails to Allege Why Any Statement by E&B Is False

Relator does not dispute that to meet the standards set out in Rule 9(b) it must allege specific facts showing "what is false about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). It "must specify the content of the fraudulent representation, the person who made it, when and where the representation was made, and the manner in which it was untrue and misleading, or the circumstances indicating that it was false." *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1011 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017).[7] But Relator does not allege specific facts regarding what is false about any statement of E&B or who made any false statement.

First, Relator alleges that "allegations regarding the E&B 401(k) plan's forms" sufficiently plead falsity. (Opp. at 19-20.) But these allegations are not specific facts showing what is false about E&B's statements nor who said them. Instead, Relator has generally alleged a different fact and a conclusion that is not drawn from it without some further explanation. The E&B 401(k) plan form 5500 shows that, during the course of a year, the number of "participants" in an employee benefit plan (a number that includes everyone with some vested balance in a plan)

---

[6] No new allegations or amendments included in the Second Amended Complaint change this analysis. The Second Amended Complaint does not describe any new sources, at all, that Relator accessed or relied upon and does not claim that Relator has any independent knowledge that does not depend upon public sources. (ECF No. 50.)

[7] This is, of course, a higher standard than simply alleging a "plausible inference" of falsity.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                    -12-                    1:24-CV-00928-CDB

153200312.3 0056939-00031

is different and higher than 257, the number of employees reported on an SBA form for a pay period. (Opp. at 19-20.) Then, Relator concludes from this off-target comparison that E&B's report of the number 257 on its SBA application must be false. In other words, Relator alleges two discrete facts—one involving participants in a benefit plan and the other involving statements regarding the number of employees—and then draws a conclusion that does not flow from these facts. There is no specific "why" to plead how employees in a pay period equals plan participants in a year. Moreover, Relator has alleged that, generally, E&B made these statements, but it has not alleged that any individual made these statements.

Second, Relator doubles down on the theory that E&B has certain affiliates and claims that there are affiliates because the "Galesi Group" owns E&B and "controls" other entities. There are no particularized allegations related to ownership or control. These are legal conclusions, not facts. *See e.g.*, *Serafin v. Realmark Holdings, LLC*, 797 F. Supp. 3d 1075, 1079 (N.D. Cal. 2025) (noting that "whether Mr. Serafin possesses "ownership" of Realmark, Inc. is a legal conclusion.") In the FAC, the "Galesi Group," is not even identified as a legal entity at all.[8] Whatever the Galesi Group is, how it "owns" E&B or any other entity is not alleged. *See* Fed. R. Civ. P. 9(b)("a party must state with particularly the circumstances constituting fraud"). The FAC's allegations of falsity certainly fail under the Rule 9(b) standard.

## 2.    Relator Alleges No Facts Sufficient to Show Scienter

The Opposition, likewise, does not identify facts, rather than conclusory statements to show scienter. To meet basic pleading requirements, a complaint cannot rely on "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, it must allege sufficient "factual matter" that could make a claim plausible on its fact. *Id.* This means that when a complaint simply parrots statutory standards, rather than alleging specific facts, it is subject to dismissal.

The language in the Opposition confirms that there is no "factual matter" regarding any state of mind. The Opposition first recites the irrelevant fact that the Form 5500 shows a different

---

[8] Even if allowed to amend, Relator will never be able to plead that the Galesi Group is a legal person.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS
153200312.3 0056939-00031
-13-
1:24-CV-00928-CDB

number of plan participants than E&B's loan application. (Opp. at 22.) But this fact (as well as the similarly irrelevant allegation that E&B's president signed its Form 5500) does not show that E&B engaged in an "intentional, palpable lie" or somehow *knew* that the number of its employees was not accurate. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). The Opposition then describes the language on the SBA form and the SBA website—but does nothing to explain how or why E&B, a natural resources company, was somehow expected to understand the legal definition of "affiliate" under complex SBA regulations or even that anyone at E&B actually reviewed this language.[9] (Opp. at 22.)

Finally, confirming just how weak Relator's arguments actually are, the Opposition states that because some other entities had names that were similar to E&B or the Galesi Group, E&B "could not plausibly claim to have overlooked" these entities when it was filing out an SBA form that counted its own employees. (Opp. at 23.) But, of course, nothing in the SBA regulations says anything about using similar business names of different entities as a means of determining affiliation. Tellingly, none of the entities that Relator identifies as relevant to its claims have any name similar to E&B or the Galesi Group. (*See* FAC 80 (describing number of employees in "Distribution Unlimited, Inc.," "Rotterdam Ventures, Inc.," and "Northeast Industrial Park, Inc.").

Stripped of these irrelevant statements, the FAC alleges scienter only because E&B signed a form with "knowledge of, or reckless disregard" for the truth. (Opp. at 23.) This allegation simply reproduces the legal elements to show scienter. It does not constitute "factual matter" sufficient to show scienter.

## C.    The Complaint Does Not Plead a Reverse FCA Claim

Finally, the Opposition attempts to argue that, after submitting a false application for an SBA loan, E&B committed a separate violation of the False Claims Act when it submitted a loan

---

[9] Moreover, the Opposition cannot correct the FAC's failure to allege the identity of any employee or agent who made any false statement. (Opp*., passim*.) This omission is dispositive. *See U.S., ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("Where fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or job responsibility.")

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS                    -14-                    1:24-CV-00928-CDB

153200312.3 0056939-00031

forgiveness application. To prove this claim, Relator has the burden of alleging a "false record or statement" to an "obligation to pay or transmit money or property to the Government" or that a defendant "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Importantly, "an actionable reverse false claim cannot be based on a defendant's failure to *refund* the *same* payment that was obtained by an actionable false claim." *Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1119 (D. Haw. 2021).

The Opposition confirms that Relator's Third Cause of Action is based on Defendant's alleged failure to refund the *same* payment that is alleged to be false and for which Relator seeks relief in its First and Second Causes. It confirms that the only allegedly "false" statement (and as explained above, this allegation is not sufficient to show falsity) is the false claim for "approval of the Second Draw PPP loan"—the same false claim that supports Relator's first and second causes of action. (Opp. at 24.) It does not identify any separately payment, not identified in the other causes of action. As a result, the Opposition confirms what is clear from the FAC itself: that the Third Cause of Action is entirely duplicative of the first two causes of action and is not based on any separate payment. For this separate reason, the Third Cause of Action for a "reverse false claim" must be dismissed.

## III.  CONCLUSION

For the reasons set forth above and those included in E&B Motion to dismiss, E&B respectfully requests that the Court dismiss Relator's First Amended Complaint with prejudice.

DATED:  June 22, 2026

STOEL RIVES LLP

*/s/ Jacob C. Goldberg*
MATTHEW D. SEGAL, Bar No. 190938
matthew.segal@stoel.com
JACOB C. GOLDBERG, Bar No. 310862
jacob.goldberg@stoel.com

*Attorneys for Defendant*

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS
153200312.3 0056939-00031

-15-

1:24-CV-00928-CDB